**Becky CHAMBERS, Plaintiff–Appellant,**

v.

**AMERICAN TRANS AIR, INC., Defendant–Appellee.**

**No. 93–1057.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1993.

Decided Feb. 28, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied May 4, 1994.

As Modified May 18, 1994.

Gordon B. Dempsey, Indianapolis, IN (argued), for plaintiff-appellant.

Gregory J. Utken, Roberta S. Recker (argued), Cherry Cox, Baker & Daniels, Indianapolis, IN, for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and LEINENWEBER, District Judge.*

CUDAHY, Circuit Judge.

Becky Chambers brought this Title VII action against her employer, American Trans Air, Inc. (ATA). Chambers worked for ATA from October 1982 until July 1987, first as a contract administrator and later as a crew planner. In June 1987, Chambers wrote a letter to her supervisor tendering her resignation, effective July 18, "pending correction" of two areas. Specifically, she demanded a pay increase, and that the company hire additional crew planners.

Rather than bowing to her demands, Chambers' supervisor accepted her resignation. After filing a charge with the Equal Employment Opportunity Commission (EEOC), Chambers brought this suit, claiming violations of Title VII, 42 U.S.C. § 2000e *et seq.* As the district court interpreted her complaint (and Chambers does not here object to this interpretation), it asserts seven claims, averring that Chambers was twice denied promotions and three times denied pay increases to which she was entitled. She also alleged that she was subject to "heavier workloads, harsher discipline ... and overt hostility from her supervisor" on account of her sex, and that she was constructively discharged. She also sought certification as a class action. ATA moved for, and the district court ultimately granted, summary judgment against Chambers on each of these claims. Having no individual claim, the court also found that Chambers could not serve as

a class representative. Finally, the court sanctioned Chambers' attorney under Fed. R.Civ.P. 11 for pressing a claim for liquidated and exemplary damages when Title VII permitted no such relief. We affirm in all respects.

## I. Rule 56(f).

A party opposing a motion for summary judgment must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). The opposing party will typically do this by submitting affidavits showing that material facts are in dispute. The court here found that Chambers failed to show the existence of a material dispute. But that is not surprising, because Chambers never put forward any evidence purporting to do so. Instead, Chambers twice asked for more time, though she never explained (as the rules require) why more time was necessary. The court therefore examined the record in the case as it then existed, found that Chambers had not shown the existence of a material factual dispute and entered summary judgment. Whether summary judgment was appropriate, then, turns (at least in part) on whether the court was within its discretion in deciding the summary judgment motion when it did.

Chambers' response to ATA's motion for summary judgment was less than artful. She first asked for an extension of time to respond, until February 29, 1989, and the court granted the extension. But that date did not exist. When she did respond on March 1 (which the court treated as timely), she asked for another extension of time. ATA opposed that motion.

Federal Rule of Civil Procedure 56 gives a party opposing a motion for summary judgment two choices. It can either respond, filing an affidavit showing the existence of a triable issue of fact, Fed.R.Civ.P. 56(e), or, if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated" show the existence of an

* The Honorable Harry D. Leinenweber, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

issue of fact, the court may allow further discovery. Fed.R.Civ.P. 56(f).

The first time that Chambers asked for an extension of time, the court apparently overlooked her failure to submit an affidavit explaining why more time was needed. But, when Chambers asked for a second extension of time, ATA objected, arguing that Rule 56(f) required Chambers to submit an affidavit explaining why more time was necessary. Chambers responded to this argument by moving to file a Rule 56(f) affidavit out of time, all the while insisting that she already had enough evidence to show the existence of a material issue of fact. The court responded by giving Chambers another 30 days to address the question whether her action was barred by the statute of limitations, but otherwise reserved judgment. The court ultimately granted summary judgment in part, finding that some of Chambers' claims were barred by the statute of limitations. As to those claims that were not, the court denied her motion to file a Rule 56(f) motion out of time as well as her motion for an extension of time. It then treated Chambers' proffered Rule 56(f) affidavit as a Rule 56(e) response to the motion for summary judgment and proceeded to decide the summary judgment motion. It ultimately granted summary judgment in favor of ATA on the remaining claims.

■■■ Chambers here contends that the district court abused its discretion in denying her motion for an extension of time. It is unrealistic, Chambers argues, to expect Title VII plaintiffs represented by busy attorneys in small law firms to respond to motions for summary judgment before they have completed discovery. But as this court has noted, the "fact that discovery is not complete—indeed, has not begun—need not defeat the motion. A defendant may move for summary judgment at any time." *American Nurses Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986).

■■■ While a motion for summary judgment should not be granted unless it is abundantly clear that no material issue of fact exists, Rule 56 requires the party opposing a summary judgment motion to come forward with some evidence showing the existence of such a factual dispute. If a party cannot present "facts essential to justify his opposition," Rule 56(f) requires that it explain why. The court is then permitted to deny the motion for summary judgment, allow further discovery, or "make such other order as is just." Fed.R.Civ.P. 56(f). Chambers' counsel says that it is unrealistic to expect her to be able to come forward with facts. Even if this doubtful assertion is correct, Rule 56(f) expressly sets up a device by which counsel is permitted to advance this argument, the Rule 56(f) affidavit. Because Chambers' failed to file a timely Rule 56(f) affidavit, the court's refusal to give Chambers any further time for additional discovery was not an abuse of discretion. *See Otto v. Variable Annuity Life Ins.*, 814 F.2d 1127, 1138 (7th Cir.1986), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988).

Satisfied that the court was not required to wait for Chambers to proffer any further evidence before ruling on the motion for summary judgment, the question is whether, on the evidence the court had before it, there existed a triable issue of material fact. As noted, the district court interpreted Chambers' complaint as asserting seven different claims: two claims for failure to promote (1983 and 1987), three claims for failure to receive a pay increase (1983, August 1986, December 1986), one "constructive discharge" claim and one claim that she was subjected to "harsher discipline, heavier work loads and overt hostility" from her supervisor on account of her sex. The court granted summary judgment on some claims on statute of limitations grounds and on the rest for failure to show a genuine issue of material fact.

## II. Failure to promote.

■■■ With respect to the 1983 denial of promotion claim, the district court found that Chambers' claim was barred by the statute of limitations. Under Title VII, a plaintiff must file a claim with the Equal Employment Opportunity Commission (EEOC) "within one hundred and eighty days after the alleged unlawful employment practice occurred" or be barred. 42 U.S.C. § 2000e–5(e). *See Alexander v. Gardner–Denver Co.,*

415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

■ Chambers filed her EEOC charge on January 5, 1988, and any claim for discrimination that occurred before March 11, 1987 is therefore time-barred. She argues, however, that her failure to promote claim from 1983 should nonetheless survive on a "continuing violation" theory. That doctrine contemplates that activity occurring beyond the limitations period can be challenged if it is part of a pattern of discrimination that extended into the limitations period. *See generally* Douglas Laycock, *Continuing Violations, Disparate Impact in Compensation, and Other Title VII Issues,* 49 Law & Contemp. Probs. 53 (1986). But we need not decide the "continuing violation" question because, even if the 1983 claim is not time-barred, it is outside the scope of Chambers' EEOC charge.

■ Filing an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken. *Alexander,* 415 U.S. at 44, 94 S.Ct. at 1017. As a result, to prevent circumvention of the EEOC's investigatory and conciliatory role, only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit. *See Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 863 (7th Cir.1985). *Accord Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124 (7th Cir.1989).

Chambers' EEOC charge complains only about unequal compensation, not failure to receive promotions. The charge alleges that male employees "were paid more money," and that Chambers "wrote asking that the inequity be corrected." Although Chambers argues that this incorporates pay inequities resulting from promotion denials, promotion is not mentioned nor do we think it is fairly implied. Therefore, since failure to promote is outside the scope of the charge, summary judgment was correctly entered against Chambers on her claims that she was denied promotions to which she was entitled, both in 1983 and in 1987.

## III. Wage discrimination.

■ Chambers claims that there were three wage increases that she should have received but did not, on account of her sex, one in 1983 and two in 1986. The district court found that one of Chambers' three wage discrimination claims—the one in 1983—was barred by the statute of limitations. Pay increases are typically continuing violations, because each pay check at a discriminatory rate is seen as the basis for a separate claim. *Bazemore v. Friday,* 478 U.S. 385, 395–96, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986). But here Chambers was briefly promoted (without a pay increase) in 1983, and then demoted back to her previous position. The district court therefore correctly concluded that this allegedly discriminatory action had no continuing effect inside the limitations period.

But even if the claim were not time barred, summary judgment was appropriate for the same reasons that the court granted summary judgment on the two 1986 claims: Chambers has failed to show a material factual dispute. In this connection, Chambers simply puts forward no evidence of a pay inequity. Plaintiff's brief essentially admits as much, insisting that it should be allowed further discovery to adduce supporting evidence. "There were probably various wage decisions about her, of which she had no personal knowledge. Ms. Chambers must be allowed, at a minimum, to compare herself to males of similar experience and ability." Pl. Br. at 28. But as noted, in light of the plaintiff's Rule 56 deficiencies, the district court was within its discretion in granting summary judgment without allowing further discovery.

■ The plaintiff's claim is that she was entitled to three pay increases, but was denied them on the basis of her sex. A plaintiff claiming disparate treatment must (1) put forward direct evidence of illegal motive linked to the challenged employment decision, or (2) establish illegal motive indirectly through the three-step model of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As a first step in the *McDonnell Douglas* process, Chambers must show that as a female she

was treated differently than a similarly situated male.

There are some affidavits showing general gender discrimination at ATA. For example, Edward Latimer, a former vice president of ATA, testified in an affidavit that sexism was pervasive in the corporation, and that some women managers were paid less than male managers in comparable positions. But there is no link from this information to employment decisions involving Chambers.

■ Liability under Title VII does not turn on the bigotry of company managers unless that bigotry resulted in injury to the plaintiff. A showing of other instances of discrimination in the company may have evidentiary value, but it is not a substitute for a showing of injury to the plaintiff. There therefore needs to be a link between an ATA's manager's alleged prejudice, and the decisions that Chambers is challenging. *See Shager v. Upjohn,* 913 F.2d 398, 405 (7th Cir.1990).

Lacking direct evidence, we turn to the question whether, under the burden-shifting analysis set out in *McDonnell Douglas,* Chambers can survive the summary judgment motion. We find that she cannot. Because there is no evidence in the record showing that Chambers was treated any differently than a similarly situated male, based on the record Chambers cannot make out a prima facie case of discrimination. This, of course, may be due to the fact that the court decided the summary judgment motion before Chambers conducted much discovery. The record contains no evidence of what any of ATA's employees were paid. Chambers is therefore unable to point to payroll records, pay stubs or any other evidence to suggest that she was paid less than similarly situated men.

Nor is it even clear that, had the court allowed the plaintiff an opportunity for further discovery, it would have helped Chambers' case. As the district court noted, Chambers herself testified in a deposition that she had no reason to believe that she failed to receive any of the three wage increases because she is a woman. While this statement would not entitle ATA to summary judgment if, in fact, the rest of the record contained evidence sufficient to create a triable issue of material fact, in the absence of any such evidence the district court correctly granted summary judgment in favor of the defendant on these claims.

## IV. Hostile environment.

■ Chambers also alleges that she was subject to "harsher discipline, heavier work loads and overt hostility" from her supervisor. Title VII, of course, is not limited to economic discrimination, but rather is intended "to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Court recently reaffirmed this principle, and rejected the rule, adopted by a number of circuit courts, under which an employee needed to show that she suffered psychological harm in order to make out a hostile work environment claim. *Harris v. Forklift Systems,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The EEOC's new proposed guidelines emphasize that "title VII affords employees the right to work in an environment free from discriminatory intimidation, insult, and ridicule." 58 Fed.Reg. 51266, 51267 (1993) (proposed 29 C.F.R. §§ 1609.1, 1609.2). Thus, under the proposed guidelines, harassing "conduct may be challenged even if the complaining employee(s) are not specifically intended targets of the conduct." *Id.* (proposed 29 C.F.R. § 1609.1(e)).

Chambers insisted that she was subjected to "harsher discipline, heavier work loads and overt hostility" from her supervisor. The district court granted summary judgment for ATA on all of these claims, concluding that these issues were first raised in Chambers' reply brief. We agree that no allegation of harsher discipline or heavier work loads appears in her complaint or EEOC charge. But we disagree with this conclusion insofar as it relates to the allegation of "overt hostility." Chambers' EEOC charge alleges that "females, including those in management, were routinely referred to in

vulgar sexist language in their absence, by the highest levels of management." In our view, this allegation fairly raises the issue of "hostile work environment."

In addition, the record contains some evidence to support this charge. For example, Edward Latimer, the former vice president of ATA, said in his affidavit, that the CEO of the company "routinely referred to the chief stewardess as the 'head screw'." Latimer's affidavit also alleges that the CEO referred to other female employees in sexist, vulgar and patently offensive terms. We therefore find that Chambers did fairly allege a hostile work environment claim in her EEOC charge, and that there is perhaps enough evidence in the record on this account for her to survive the motion for summary judgment.

█ But even so, Chambers has not pursued a hostile work environment claim on appeal. Chambers' attorney argued primarily (and in our view unpersuasively) that the language in Chambers' EEOC charge alleging that she was "required" to check the work of co-employees raised the issue of harsher discipline and heavier work loads. Pl.Br. at 18–20. Chambers' appellate brief also contends that because the EEOC charge alleges "chauvinism," the "overt hostility" claim is preserved.

As noted, there may be evidence in the record supporting a hostile work environment claim under the framework the Supreme Court laid out in *Meritor* and refined in *Harris*. But while the passing references on appeal to "overt hostility" can be viewed as an attempt to raise this issue, they are insufficient. "A party urging us to reverse a district court's judgment has an obligation to argue why we should reverse that judgment, and to cite appropriate authority to support that argument." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). Chambers' counsel never once cited to *Meritor* or any other hostile work environment case. "We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Berkowitz*, 927 F.2d

at 1384. While there may be, on these facts, enough evidence of hostile work environment to entitle a plaintiff to go to trial, the papers filed both in the district court and on appeal make only passing reference to this claim. While the arguments below may have sufficed to preserve the issue for appeal, we will not reverse the entry of summary judgment based on skeletal snippets of argument without citation to authority.

## V. Constructive discharge.

█ The district court granted summary judgment on Chambers' claim that she was constructively discharged. In her letter of resignation, Chambers indicated that she would resign unless she received a pay increase and additional crew planners were hired. But in order to state a claim for constructive discharge, a plaintiff needs to show that her working conditions were so intolerable that a reasonable person would have been compelled to resign. *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). The district court found as a matter of law that the conditions were not so intolerable so as to require a reasonable person to resign. Entry (May 23, 1991) at 21.

We affirm for a slightly different reason. The constructive discharge doctrine is a judicially-created response to the fact that Title VII, as originally enacted, afforded no damages remedy to a harassment victim for emotional trauma or even for medical expenses she may have incurred. Thus, courts have said that where conditions are so intolerable that a reasonable person would feel compelled to resign, a plaintiff may do that, and then sue for reinstatement and back pay.[1]

Where work conditions are intolerable, under the constructive discharge doctrine a plaintiff can resign, and then bring suit against her employer as if she were fired. But to be actionable under Title VII the work conditions need to be more than merely intolerable—they need to be intolerable in a discriminatory way. Chambers demanded that she receive a pay increase and that the company hire additional workers. The dis-

---

1. The Civil Rights Act of 1991, in any event, amends Title VII to allow a damages remedy.

trict court found that the company's refusal to acquiesce did not, as a matter of law, make Chambers' working conditions intolerable. Perhaps that is correct, but even more fundamentally, as we explained in our discussion of Chambers' wage claims (at 6–8), there is no showing that ATA's decisions were discriminatory. Here too, Chambers testified in her deposition that none of these conditions had anything to do with her sex and that she had no facts suggesting that they did. That being the case, those conditions, even if intolerable, do not give rise to a cause of action under Title VII.

## VI. Class certification.

■ Having entered summary judgment in favor of ATA on all of Chambers' individual claims, the district court denied Chambers' motion for class certification as moot. Because we affirm the entry of summary judgment, we follow suit on the class action certification. An individual bringing an action on behalf of a class must be a member of the class and "possess the same interest and suffer the same injury" as members of the class. *E.g. Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974). Having no individual cause of action, Chambers cannot represent a class.

## VII. Sanctions.

■ The district court imposed Rule 11 sanctions in the amount of $1,517 against Chambers' attorney for pressing a claim for liquidated and exemplary damages. When the complaint was filed in 1988 (before the Civil Rights Act of 1991), it was clear that Title VII did not allow the recovery of liquidated and exemplary damages. *Bohen v. East Chicago, Indiana,* 799 F.2d 1180, 1184 (7th Cir.1986).

Rule 11 requires that all pleadings be signed, and that the signature "constitutes a certificate by the signer that . . . to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Gordon Dempsey, Chambers' at-torney, conceded that he did not make a reasonable inquiry into the legal basis for the claim before filing the complaint, describing the claim for liquidated and exemplary damages as a "drafting oversight." On ATA's motion, the district court imposed sanctions against him, concluding that Rule 11 sets out an objective test, and observing that an "empty head but a pure heart is no defense." Entry (October 20, 1992) at 18 (quoting *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986)).

Dempsey responds in his appellate brief by saying that the district court, in attributing his error to an "empty head," was "a bit harsh". Pl.Br. at 32. Dempsey continues (referring to himself in the third person) in his own defense:

Ms. Chambers' lawyer was within 3 points of the cut-off for National Merit finalist, a state debate champion, recipient of a George F. Baker Trust Fund (see letterhead, Harvard Business School) full scholarship to one of the 3 or 4 most selective colleges in his state [Wabash, interestingly, an all male college] and a stronger student there GPA wise than all but one of his classmates and fraternity brothers now practicing with ATA's highly prestigious law firm, Baker & Daniels. He was a stronger student by the same standard, than all but one of his classmates now practicing with any of the state's 3 largest law firms. He had 2 varsity letters in a collision sport, and was president of what may well have been the strongest fraternity on campus. He scored in the 95th percentile on the general background portion of his law boards. He was trained at a law school, where the average LSAT's are shown as exceeded by only 4 schools, in the U.S. News survey of March 19, 1990 [Duke]. He has tried 31 jury trials in various parts of Indiana, and chaired 4 trial seminars, attended by 50–350 lawyers.

*Id.* at 33 (brackets in original).

■ But unfortunately for Mr. Dempsey, this long list of accolades and accomplishments provides no defense. As we noted in *Thornton,* the "[t]est under Rule 11 is objective." The point is that "every lawyer

must do the necessary work to find the law *before* filing the brief." *Thornton,* 787 F.2d 1151, 1154 (7th Cir.1986). That admonition applies even to lawyers who have two varsity letters in a collision sport and who were presidents of their fraternities. Mr. Dempsey failed to comply with the rule's clear edict, and the district court was correct to impose sanctions.

ATA finally moves this court to sanction Dempsey pursuant to Fed.R.App.P. 38 for bringing this appeal. But Rule 38 sanctions are appropriate only when an appeal is frivolous. While we affirm the district court, we do not find the appeal to be a frivolous one, and therefore decline the invitation to impose Rule 38 sanctions.

## VIII. Conclusion.

For the reasons explained herein, the judgment of the district court and the order imposing Rule 11 sanctions are AFFIRMED. The request for Rule 38 sanctions is DENIED.