103 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earl SMITH, Plaintiff-Appellant,
v.
PICK 'N SAVE and John Fix, Defendants-Appellees.
 No. 95-3921.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 13, 1996.*
Decided Nov. 25, 1996.
 
 Before POSNER, Chief Judge, and CUMMINGS and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Earl Smith, an African-American, was hired by Pick 'n Save on or about February 9, 1994 as a clerk in the meat department. Smith's duties included cleaning the meat-cutting machines, serving customers and filling the meat counter. Pl.Cmplt. at 2. When he started at Pick 'n Save, Smith was provided with an employee handbook which stated that he, like all new employees, was on a sixty-day probationary period during which the company would decide whether he was suited for the position. Smith testified that he received the handbook and was aware of the probationary period. On March 4, 1994 Smith received his "two-week" written review from John Fix, his immediate supervisor and a defendant in this action, in which Fix stated that Smith was performing his tasks too slowly and that he needed to improve his productivity.[1] After Fix reprimanded him in front of customers, Smith approached Pick 'n Save's personnel assistant and requested a transfer to a different department but this request was denied because Fix had found his work unsatisfactory. On March 19, 1994, Smith and Charles Sternlieb, a Caucasian meat clerk hired at approximately the same time as him, were terminated because, according to Fix, each was still performing his tasks too slowly.
 
 
 2
 Smith subsequently filed a Title VII claim against Pick 'n Save and Fix alleging racial discrimination. The district court granted the defendants' motion for summary judgment and Smith appeals arguing that the district court erred in finding that he had not stated a prima facie case of discrimination, that the court did not adequately explain its determination that race was not a pretext for the firing, and that its finding that race was not a motivating factor was clearly erroneous. Because we agree that Smith neither has stated a prima facie case of discrimination, nor met his burden with respect to demonstrating that the defendants' reason for firing him was pretextual, we affirm.
 
 
 3
 We review a grant of summary judgment de novo and draw all inferences in favor of the non-moving party. Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1402 (7th Cir.1996). Summary judgment is appropriate if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the non-moving party bears the burden of proof on an issue, however, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986). The non-moving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion. Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir.1994) (citing Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993). In addition, the summary judgment standard is applied "with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Id. (citations omitted).
 
 
 4
 Under Title VII, an employer is prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1) (1994). "The central question in any employment discrimination case is whether the employer would have taken the same action had the employee been of a different race ... and everything else had remained the same." Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir.1996) (citing Gehring v. Case Corp., 43 F.3d 340, 344-45 (7th Cir.1994)). While an employee may attempt to demonstrate the alleged discrimination directly or indirectly, Smith relies upon indirect evidence as the basis for his claim, the test for which is articulated in McDonnell-Douglas v. Green, 411 U.S. 792 (1973). Under the McDonnell-Douglas test, Smith first must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) the defendants treated similarly-situated employees more favorably. McDonnell-Douglas, 411 U.S. at 802. If the plaintiff succeeds in establishing his prima facie case, it "creates a presumption that the employer unlawfully discriminated against the employee." Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The burden of production then shifts to the defendant to show that it had a legitimate, nondiscriminatory reason for the adverse action. Burdine, 450 U.S. at 255. If the defendant makes this showing, the presumption of discrimination is eliminated and the plaintiff must demonstrate by a preponderance of the evidence that the defendant's stated reason for the action was merely a pretext for discrimination. Burdine, 450 U.S. at 253. Thus, Smith bears the ultimate burden of persuasion to show intentional discrimination despite the interim burden-shifting process of the McDonnell-Douglas analysis. Id.
 
 
 5
 We agree with the district court that Smith failed to create a genuine issue of material fact with respect to proving his prima facie case of discrimination. He has provided no evidence that he has been treated differently than those who were similarly situated. While he contends that he wrongfully was prevented from transferring to a different department, he offers no evidence that other employees in a similar situation were allowed to do so. He also has not demonstrated that he was treated differently when he was fired for not performing his job satisfactorily. In fact, the record establishes that Sternlieb also was terminated for working too slowly. Smith also argues that he was denied the opportunity to have a grievance arbitrated with respect to his termination, yet offers no evidence that similarly situated employees on probation have had the same opportunity. Smith makes no attempt to rebut the affidavit of Steven Mueller, assistant personnel manager at Pick 'n Save, which states that Pick 'n Save's contract with the union does not require it to arbitrate grievances involving the termination of probationary employees and that it routinely has refused to do so.
 
 
 6
 Even assuming Smith did make out a prima facie case of discrimination, he has failed to create a genuine issue of material fact with respect to the defendants' nondiscriminatory reasons for firing him. The defendants have produced Smith's evaluation describing Fix's dissatisfaction with Smith's productivity and punctuality. Smith admits receiving this evaluation and being warned that he was not performing up to his employer's expectations and that he had two weeks to improve. When Smith and Sternlieb did not improve to Pick 'n Save's satisfaction, they both were fired. Smith claims that the reason provided was pretextual because the evaluation states that he was not performing his cleaning duties adequately with no mention being made of the other duties he performed. The evaluation, however, includes a general criticism regarding Smith's productivity and ability to complete his assigned tasks in a timely manner, and does not necessarily focus on his cleaning duties. However, even if Fix had been critical only of Smith's cleaning abilities, this does not demonstrate that the defendants' reason for firing him was pretextual. Absent some evidence that Pick 'n Save did not "honestly believe[ ] in the reason it offers," Smith has failed to create a genuine issue of material fact. Sample v. Aldi, 61 F.3d 544, 549 (7th Cir.1996) (citing Rand v. CF Indus., Inc., 42 F.3d 1139, 1145 (7th Cir.1994)). Further, he has provided no evidence that he was performing his tasks satisfactorily except his own assertions that he was working hard and trying to improve. These, however, are not sufficient to refute the evidence provided by the defendants. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir.1994) (self-serving assertions are generally insufficient to raise an issue of fact); see also Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir.1996) ("Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter.").
 
 
 7
 Smith next attempts to show systemic discriminatory termination policies on the part of Pick 'n Save, apparently in an attempt to assert a disparate impact claim against the defendants.[2] Smith's identification of the allegedly discriminatory policies is deficient. He identifies the allegedly discriminatory policies in his reply brief only as the "hiring and firing" policies. Appellant's Reply Br. at 12. His complaint and his response to the defendants' motion for summary judgment fail to shed any additional light on the specific policies he is challenging. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989) ("As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack.") (emphasis added); see also Gilty, 919 F.2d at 1254 ("As a matter of law as well as a matter of common sense, one must first identify a specific employment practice before one can challenge it."). Smith has failed to identify a specific termination practice that has had a disparate impact on African-Americans. Furthermore, he has failed to proffer the statistical analysis required by Wards Cove. In order to show the disparate impact, the plaintiff must make a comparison of the racial composition of persons in the labor pool qualified for the position at issue with those persons actually holding that position. Wards Cove, 490 U.S. at 657. The plaintiff must also demonstrate that the allegedly discriminatory practice is connected to or caused the disparate impact. Id. Smith has failed both to make any comparison with those who are qualified in the labor pool and has failed to show that the allegedly discriminatory practice on the part of Pick 'n Save had a disparate impact on African-Americans.
 
 
 8
 We agree with the district court that Smith's statistical analysis is unpersuasive. Morgan v. Harris Trust and Sav. Bank, 867 F.2d 1023, 1028 (7th Cir.1988) (statistical evidence used to show discriminatory impact must be significant or substantial) (citations omitted). Smith contends that only 72 of the 388 terminations in 1993 (approximately 18.5%) involved white employees, implying that a much higher number of terminations involved African-Americans, and thus, apparently demonstrating discriminatory termination policies on the part of Pick 'n Save.[3] This analysis suffers from three flaws. First, Smith fails to distinguish between voluntary (quit/no shows) and involuntary terminations. Second, he makes no representation regarding the number of or reasons for the African-American employee terminations in 1993 so that a comparison can be made between the treatment of African-American employees and white employees.[4] Third, an affidavit submitted by Pick 'n Save states that of the 309 employees hired in 1994, 254 or 82% were black. Smith fails to address the significance, if any, of the number of terminations of African-American employees in light of the total number of African-American employees and new hires.[5] In addition, he "has not shown any link between this alleged discrimination and the employment decisions which [he] is challenging." Sample, 61 F.3d at 551 (citing Chambers v. American Trans Air, Inc., 17 F.3d 998, 1004 (7th Cir.1994). Consequently, the district court properly found that Smith had not created a genuine issue of material fact regarding the defendants' proffered reasons for why he was fired.[6]
 
 
 9
 Smith also challenges the district court's denial of his motion to compel answers to certain interrogatories, which we review for an abuse of discretion. Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir.1993). We find that the district court did not abuse its discretion in determining that the defendants had turned over all evidence that was relevant or reasonably calculated to lead to the discovery of relevant evidence.
 
 
 10
 Finally, because we affirm the district court's grant of summary judgment against Smith, we need not address the issue of whether John Fix is a proper defendant. The judgment of the district court is
 
 
 11
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.A.P..P. 34(a); Cir.R. 34(f)
 
 
 [1]
 While the defendants refer to this evaluation as the "two-week" evaluation, it actually was not presented to Smith until almost four weeks after he began work
 
 
 [2]
 In order to allege a prima facie case of discrimination based upon disparate impact, the plaintiff first must identify a specific employment practice and then demonstrate that this practice causes a substantial disproportionate impact on the protected class. Gilty v. Village of Oak Park, 919 F.2d 1247, 1254 (7th Cir.1990)
 
 
 [3]
 Smith also attempts to demonstrate a "pattern of hire with no intention of permancy [sic]," Appellant's Br. at 12, but cites employment statistics for one department in Pick 'n Save for only one year. These statistics are insufficient to demonstrate discriminatory impact
 
 
 [4]
 A calculation by this court shows that of 281 terminations of African-American employees in 1993 (not including 3 "terminations" related to death and injury), 197 (approximately 70%) were quit/no shows, 78 (approximately 28%) were terminated for a reason and 6 (approximately 2%) did not return from a leave of absence or a workers' compensation leave. A count of the terminations of white employees in 1993 reveals that of the 88 that were terminated in 1993, 70 (approximately 80%) were quit/no shows, 16 (approximately 20%) were terminated for a reason and 2 did not return from a leave of absence. In 1994, of the 280 total African-Americans who were terminated, 74 (approximately 26.5%) were terminated for a reason while 205 (approximately 73.5%) were quit/no shows. Of the 56 white employees terminated in 1994, 11 (approximately 20%) were terminated for a reason while 45 (approximately 80%) were quit/no shows. It does not appear that any significant disparity exists in 1993 or 1994 between the percentage of terminations of African-American employees and white employees
 
 
 [5]
 Based upon our calculations, of the 350 total terminations in 1994, 280 (approximately 80%) were African-American. The percentage of terminations of African-American employees, then, is almost equal to the percentage of African-Americans who were hired
 
 
 [6]
 Our decision in Fisher v. Transco Services-Milwaukee, 979 F.2d 1239 (7th Cir.1992) is distinguishable. In Fisher, we reversed the district court's grant of a motion for summary judgment in an age discrimination suit in which the termination ration under a productivity evaluation program of older to younger employees was 10 to 1, the program was abandoned after 48 weeks, and workers were successful only 20 times out of 1,182 attempts to meet the program's standard. Id. at 1245. These preliminary statistics were sufficiently probative to create a genuine issue of material fact to allow for further examination and development, and consequently, we concluded that summary judgment was premature. Id. Here, however, the statistics offered by Smith do not lead us to conclude that further examination would support his claim