**Kristin BEUL, Klaus Beul, and Petra Beul, Plaintiffs,**

v.

**ASSE INTERNATIONAL, INC., and Admiral Insurance Company, Defendants.**

No. 98–C–426.

United States District Court, E.D. Wisconsin.

Oct. 19, 1999.

964

Heiner Giese, Giese & Weden, Milwaukee, WI, for Plaintiffs.

Timothy J. Strattner, Amy J. Doyle, Schellinger & Doyle, Waukesha, WI, Nancy J. Sennett, Brett H. Ludwig, Foley & Lardner, Milwaukee, WI, for Defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

When plaintiff Kristin Beul was a 16 year-old German exchange student living in the Wisconsin home of Richard Bruce, his wife Cheryl and their daughter Angela, she became involved in a sexual relationship with Mr. Bruce, her "host father". According to Kristin's testimony at trial, he initially employed some force to accomplish a sexual act with her and later used psychological pressure, including threats of suicide, to coerce her into continuing the relationship and keeping it a secret. Shortly after her "host mother", Cheryl Bruce, found "love letters" from Kristin in her husband's truck, Mr. Bruce committed suicide in the face of an impending crimi-nal investigation. There was evidence at trial to suggest that Kristin sustained severe psychological injuries as a result of her involvement with Mr. Bruce, including post-traumatic stress disorder, bulimia, self-mutilation and thoughts (as well as acts) of attempted suicide.

Kristin and her parents, Klaus and Petra Beul, filed this diversity action against defendant ASSE International, Inc., ["ASSE"], the foreign corporation that ran the student exchange program, and its insurer Admiral Insurance Company. The plaintiffs alleged that ASSE's negligent supervision was a cause of the sexual relationship and the resulting harm that Kristin suffered. The jury agreed, returning a verdict in favor of the plaintiffs on August 4, 1999. The jury attributed 59% of the causal negligence to ASSE, and 41% to Kristin. The jury determined that her damages were $1,100,000 and that her parents' damages for loss of consortium were $17,000. After applying the jury's apportionment, the court entered judgment in favor of Kristin for $649,000 and in favor of her parents Klaus and Petra Beul for $10,030.

Presently before the court are the defendants' post-trial motions for judgment as a matter of law, a new trial and amendment of the judgment. This decision will assume familiarity with the court's prior opinion granting in part and denying in part the defendants' motion for summary judgment, in which the factual and procedural background of this case are stated in greater detail. Where necessary, the court will discuss the evidence presented at trial in the context of discussing the defendants' motions.

## I. RULE 50 MOTION

The defendants move for judgment as a matter of law, and alternatively for a new trial, on the ground that there was no evidence that ASSE caused any injuries to the plaintiffs. The defendants made the same argument in their summary judgment motion, and as the argument related

to the claims that went to trial, the court rejected it. Based on the evidence presented at trial, I now believe there is even less reason for granting judgment as a matter of law on the issue of causation.

█ The defendants do not challenge the jury's finding that ASSE was negligent. The evidence, which I must review in the light most favorable to the plaintiffs, supports the conclusion that ASSE was negligent in many significant respects. These include ASSE's noncompliance with a number of specific duties contained in its manual, federal regulations, and student exchange organization accreditation standards. Most if not all of these duties were designed to protect the children in the student exchange program from the risks associated with having them live with adult strangers in another country. In addition, ASSE failed to perform many obligations imposed by the common-law negligence duty of reasonable care. Examples of these failures include, *inter alia:*

-not maintaining anything other than minimal and perfunctory contact with Kristin;

-not having any meaningful communication with Cheryl Bruce, who testified that she immediately became suspicious of Richard Bruce's relationship with Kristin and would have told ASSE's area representative about her problems had she been asked;

-not speaking privately with Kristin or the Bruces;

-not giving Kristin the student handbook containing specific instructions to students about what to do if they were in "sexual jeopardy";

-not maintaining contact with school authorities (Kristin had a number of absences because, unbeknownst to his family, Richard Bruce kept her home from school on many occasions to have sex with her);

-not providing formal training or supervision for ASSE's area representative.

I believe that these factors bear an important relationship to the issue of causation. For example, if ASSE's area representative had advised Kristin about how to respond if she was in "sexual jeopardy", Kristin may have been better prepared about what to do when Richard Bruce began making improper advances. Had the representative spoken with Cheryl Bruce and encouraged her to discuss any problems, Ms. Bruce may have told her about her concerns, or suggested that another host family be found for Kristin. A personal visit with the family may have led the representative to observe, as Ms. Bruce did early on and the representative did eventually, that Kristin and Richard Bruce were interacting improperly. Checks with the school might ultimately have led to the other members of the Bruce family discovering that Mr. Bruce had been secretly arranging Kristin's frequent absences from school.

ASSE's omissions in this case can each be linked to a possibility that the injuries sustained by Kristin might have been avoided. A mere possibility is not enough, however, and some factors, such as not meeting Kristin at the airport, seem remote from the harm that occurred to her in this case. Nevertheless, other omissions, such as not speaking with Cheryl Bruce or failing to provide a copy of the student handbook, are perhaps sufficient in and of themselves to support a finding of causation. More important, the jury reasonably could find that all of these possibilities add up to a probability that the injury to Kristin would have been avoided if ASSE had complied with its duties, duties which were specifically designed to ferret out or prevent any problems.

The defendants, relying on the fact that Kristin herself kept the improper relationship a secret until it was discovered by Ms. Bruce, argue that Kristin would not have confided in anyone. The jury was entitled to believe this argument, but it was not required to do so. The jury could have inferred, based on Kristin's testimony, that she wanted to tell someone about Mr. Bruce's improper behavior, but for obvious reasons did not tell the Bruces and was

afraid to tell her parents. The jury could have believed that ASSE's area representative (if she had met her responsibilities) would have been the most appropriate person to have dealt with precisely this type of situation. They also could have found that what kept Kristin from telling the area representative was the lack of communication and rapport between them, the failure to sufficiently encourage Kristin to seek help if she had a problem, and the failure to specifically advise Kristin about what to do if she was in "sexual jeopardy". Moreover, even if the jury did believe that Kristin would not have told anyone about the relationship, they could still have found causation based on other theories that do not depend on Kristin's disclosure.

Looking at the evidence of ASSE's failures as a whole, I believe that the jury reasonably could have found that the agency totally failed to guard against the possibility that a host parent with sinister intentions might seek to sexually abuse a teenaged student who, out of fear, humiliation, lack of maturity or other reasons, would keep the abuse secret. Reviewed in the light most favorable to the plaintiffs, the evidence supports the finding that this overall failure, more likely than not, was a cause of the plaintiffs' injuries. *See* Wisconsin Jury Instructions—Civil 1500 (submitted to the jury). Accordingly, I will deny the defendant's motion for judgment as a matter of law. I will also deny the alternative motion for a new trial, as I believe the jury's finding of causation is not against the greater weight of the evidence.

## II.  MOTION FOR A NEW TRIAL

■  The defendants claim they are entitled to a new trial on the basis of several prejudicial errors that the defendants allege had occurred during the trial. One of these claimed errors is that the court informed the jury of the effect of its verdict in answering one of their questions. Their question, which arose during deliberations, was: "What bearing does the negligence factors have on the $ amounts we may or may not choose to award?"

This somewhat ambiguous question was interpreted by the court and, I believe, by the parties' attorneys, as inquiring about the relationship between the degree of negligence of one or both of the parties and the amount of damages. After considering the suggestions of counsel, the court informed the jury that as far as *they* were concerned, their answers to the damages questions had nothing to do with their answers to the negligence questions, but that their answer to the comparative negligence question (number five), if they reached it, would affect the amount of damages *the court* would ultimately award in entering the judgment.

I do not accept the defendants' contention that these comments improperly informed the jury of the effect of its verdict. I believe that the court gave the jury an accurate response to their question, without ignoring their question or avoiding giving them an answer. In fact, the answer that the court ultimately gave the jury was generally consistent with the answer recommended by defense counsel:

> I would simply answer the jury by saying that the impact of the negligence findings on the ultimate judgment is the province of the court and that they do not need to be concerned with that and that they are asked only to find what sum of money will reasonably compensate the plaintiffs and just leave it at that.

I told the jury that their answer, if any, to question five would have a significant impact, which the court would determine, on the damages ultimately awarded. The jury was given no indication of *how* their answer would affect the judgment, and the court made clear that this was not their concern. Any variance between my answer and the defendants' suggested answer, if there was error in it at all, does not provide the basis for granting a new trial.

The court did not, as the defendants claim, instruct the jury that they had to answer question five in order to award the

plaintiffs' any damages. Such an erroneous instruction, had it been given, would have favored the defendants by incorrectly suggesting to the jury that they should find Kristin at least partially negligent. The transcript also belies the defendants' assertion that the court told the jury that the plaintiffs would only receive the percentage of damages not attributable to Kristin. The court gave no such instruction.

The defendants argue that the court erred in instructing the jury that "the law in Wisconsin does not allow a child under the age of 18 to consent to an act of sexual intercourse". The defendants do not contend that the instruction incorrectly states the law, nor do they argue that this legal principle is not relevant to this case (I believe it clearly is). Instead they assert that the instruction was prejudicial to them because it tended to diminish Kristin's responsibility and "place[ ] the two parties on different levels." This argument is waived because it is unsupported by citation to any authority. *See Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005 (7th Cir.1994). In any event, it is black-letter law that different standards of care apply to adults and minors. *See, e.g.* Wisconsin Jury Instructions—Civil 1582: "Comparative Negligence: Adult and Child" (collecting cases in comment).

Moreover, the defendants concede that the jury could consider other factors, besides her supposed consent, in weighing Kristin's negligence. The jury did, in fact, find that 41% of the causal negligence was attributable to her.

For similar reasons, the court rejects the defendants' somewhat related argument that they must be granted a new trial because "ASSE cannot be more negligent than Kristin Beul, an active participant in the affair." The argument is unsupported by citation to any authority, and it ignores the differing standards of care that applied to Kristin and ASSE. In addition, it depends on the theory that Kristin was an entirely willing participant in the relationship from its inception, a view that the jury arguably could have rejected in reaching its verdict.

I have considered the defendants' remaining arguments in favor of a new trial. I conclude that they are waived because they are not based on any pertinent authority (*See Chambers*, 17 F.3d at 1005) and, also, they are devoid of merit.

### III. MOTION TO AMEND JUDGMENT

The defendants seek an order amending the judgment for the same reasons advanced in support of their other motions. For the reasons set forth above, I hold that the defendants are not entitled to amendment of the judgment.

### ORDER

IT IS ORDERED that the defendants' motions for judgment as a matter of law, a new trial and amendment of the judgment be and hereby are denied.