NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 14, 2010[*]
Decided April 15,  2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-3334

| | |
|---|---|
| SHARON MURRAY, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 08-03159 |
| AT&T MOBILITY LLC, *Defendant-Appellee.* | Jeanne E. Scott, *Judge.* |

**O R D E R**

Sharon Murray worked as a customer-service representative in AT&T's Springfield, Illinois, call center from 2003 until she was fired in March 2008 for excessive absenteeism. During the six months before AT&T fired her, Murray missed a substantial amount of work for health-related reasons.  This case arises from a dispute between Murray and AT&T over how much of that time was covered by the Family and Medical Leave Act (FMLA), *see* 29

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Accordingly, Murray's motion for oral argument is denied and the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2)(C).

U.S.C. §§ 2601-2654, and whether AT&T was required to accommodate her with additional leave under the Americans with Disabilities Act (ADA), *see* 42 U.S.C. § 2000(e).  The district court granted summary judgment to AT&T on the federal claims and declined to exercise supplemental jurisdiction over the remaining claims based on Illinois workers' compensation law.  We affirm.

## Background

AT&T's call centers must maintain certain staffing levels to handle the large volume of calls that they receive each day.  The company, therefore, strictly enforces its attendance policy through a point system to keep track of each employee's unscheduled absences.  Under that policy, AT&T may fire for excessive absenteeism an employee who accumulates 12 or more points during a rolling 12-month period.  (Points are based on the length of absence; absences between two hours and a full shift generate one point).  Additionally, AT&T extends the 12-month period by the number of days of any continuous absence, effectively delaying the expiration of points.  Not all absences are subjected to the point-system.  Employees do not incur points for time off for short-term disability and for up to 480 hours (i.e., 12 weeks) of FMLA leave.

In August 2007 Murray submitted a request for intermittent FMLA leave.  She needed time off to treat her supraventricular tachycardia, a heart-rhythm disorder that causes the heart to race suddenly and produces secondary symptoms of dizziness, sweating, chest pain, shortness of breath, and an inability to concentrate.  AT&T (acting through a third-party administrator) approved her request, allowing Murray leave up to two days weekly, but this proved insufficient.  So AT&T approved Murray's second request for FMLA leave, this one for the entire period between September 24 and October 21; it also approved her request for short-term disability benefits.

The dispute over Murray's use of FMLA leave and the calculation of her absence points began when she returned to work in October 2007.  AT&T accommodated Murray with a modified return-to-work schedule from October 22 through December 17 that required her to work only 24 hours per week (three 8-hour shifts).  AT&T charged the missed 16 hours per week against her FMLA balance, and notified her of this by letter.  Murray also took additional FMLA leave under her previously approved intermittent-leave plan on some of the three days a week that AT&T had scheduled her to work.  But Murray did not properly report these absences because, she says, she had trouble logging into the company's leave-recording system.  Instead, Murray tracked her absences on her personal calendar, which her attendance manager relied on when the manager returned from her own leave of absence in February 2008.  When the manager finished reconciling Murray's attendance records in February, she realized that Murray had exhausted her FMLA leave.

The parties disagree about whether and when Murray's FMLA leave ran out, but Murray concedes that by February 8 she knew that AT&T believed she had used all 480 hours. But she continued to take leave to address her health issues, and each time she received a letter denying her leave request and explaining that her absences did not qualify under the FMLA. On February 21, AT&T managers warned Murray that all future FMLA requests would be denied because she had exhausted her 480 hours of leave.

Meanwhile, Murray told her managers that she was experiencing pain, numbness, and tenderness in her hands, wrists, and forearms—all of which she believed was caused by a work-related injury. The attendance manager recommended that Murray request an ADA accommodation. So Murray visited her doctor, who examined and diagnosed her with a form of bilateral carpal tunnel syndrome that limited her ability to type. The physician added that when Murray experiences an attack of her heart-rhythm disorder (the frequency and duration of which are not specified), she is significantly limited in her ability to breathe and perform manual tasks.

Armed with this report, Murray requested two accommodations from AT&T: permission to break up her lunch hour so that she could take more frequent breaks throughout the day, and approval to use her vacation time for medical appointments even on days already closed for additional employee leave requests. AT&T denied her requests, explaining that her physician's evaluation did not support the need to take more frequent breaks, and that both of her proposed accommodations violated the collective bargaining agreement. AT&T also reasoned that it had already granted Murray an accommodation for her heart disorder: it allowed her to take breaks and perform exercises during an attack to calm her heart rate and ease her symptoms.

At the end of February, AT&T determined that Murray had accumulated 17.5 unexpired absence points. AT&T had assessed most of these points for medical absences occurring after Murray had, in its view, exhausted her FMLA balance. Three of these points, Murray claims, would have expired if not for AT&T's policy of extending the rolling 12-month attendance period for employees who have taken prolonged leaves of absence. By the time that AT&T fired her three weeks later, she had accumulated another 5.75 points, totaling 23.25.

Murray continued to complain to AT&T that it had miscalculated her FMLA leave when she was on the transitional work schedule, prompting the company to review her records. The audit revealed an error: AT&T had overcharged Murray's FMLA balance by 22 hours. But even when these 22 hours were recredited, her relevant absences still substantially exceeded her FMLA entitlement of 480 hours, and she still had a total of 18.5 points. Murray does not dispute the absences, just their legal significance.

Shortly after filing her pro se complaint, and before the parties had completed any discovery, Murray filed a motion for partial summary judgment on the issue of liability. The parties fought over additional discovery requests, but the district court allowed only discovery that complied with Federal Rule of Civil Procedure 56(f). AT&T then filed a cross motion for summary judgment, which the court granted. The court determined that Murray provided no evidence that AT&T prevented her from exhausting her FMLA leave before it fired her. In addition, the court concluded that AT&T's policy of extending the expiration date of attendance points did not violate the FMLA because the policy applied to *all* types of extended leave, not just the FMLA, and thus was not discriminatory. As for the ADA claim, the court ruled that Murray could not demonstrate that she could meet AT&T's expectation of regular attendance (an essential job function). Because she was not otherwise qualified for the job, AT&T did not violate the ADA by not providing her with a reasonable accommodation.

## Discussion

On appeal Murray renews three principal arguments on her FMLA claims that she pressed in the district court. First, she contends that AT&T fired her for absenteeism before she had exhausted her 480 hours of FMLA leave.

The FMLA guarantees eligible employees who suffer from serious health conditions 12 weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of" this right. *Id.* § 2615(a)(1); *Kauffman v. Fed. Express Co.*, 426 F.3d 880, 884 (7th Cir. 2005). As relevant here, to survive summary judgment on her FMLA "interference" claim, Murray had to produce evidence that AT&T denied her unexhausted FMLA leave. *See Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

Murray has not produced such evidence. She has furnished copies of her annotated timecard records and the company's spreadsheet summarizing her leaves of absence, but these documents do not prove that AT&T denied unexhausted FMLA leave, and courts are not required to scour the record for evidence to support a party's arguments. *See Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008); *Greer v. Bd. of Educ. of the City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). The one specific block of time that Murray claims that AT&T improperly deducted from her FMLA balance are the absences (two days each week) incurred when she was on her reduced, three-day per week schedule. She says that because the reduction was an accommodation under the ADA, the absences do not reduce her FMLA balance. But even if the modified schedule were an accommodation, AT&T could still charge the absences against her FMLA entitlement. 29 C.F.R. § 825.702(c) (employer

can provide a qualified individual with a disability a reduced work schedule as a reasonable accommodation and count this as FMLA leave if it notifies the employee).  The general rule is that other types of available leave, such as short-term disability and workers' compensation leave, may be charged against FMLA balances.  *Id.* § 825.702(d)(2); *see Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007); *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 941-42 (7th Cir. 2007).  Since Murray does not identify another dispute over the amount of time missed, there is no genuine issue regarding exhaustion of her FMLA leave.

Murray's second argument is that even if her alleged ADA accommodation could count against her FMLA leave, AT&T had to notify her of this policy, *see* 29 C.F.R. §§ 825.300, 825.702(c), before it could subtract those hours from her statutory leave.  Murray dismisses the letter that AT&T sent her notifying her of the policy as fraudulent, but she has no evidence to support the charge.  Moreover, a technical violation of an FMLA regulation does not entitle Murray to relief unless she can demonstrate prejudice.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-89 (2002).  But this she cannot do because she has not said that she would have refused the reduced schedule if she had known that it counted against her FMLA leave.  *See id.* at 90.

Murray's third FMLA claim is that AT&T's policy of delaying the expiration of absence points—by stopping the 12-month expiration clock for the time that an employee is on FMLA leave—unlawfully punishes the employee for invoking FMLA leave.  In *Bailey v. Pregis Innovative Packaging, Inc.*, No. 09-3539, slip op. at 8 (7th Cir. Apr. 2, 2010), we recently held that the FMLA does not prohibit an employer from stopping the clock and postponing the expiration of absence points by the length of an FMLA leave.  We explained that the Act does not require employers to extend benefits *during* FMLA leave, 29 U.S.C. § 2614(a)(3)(A), and continuing to run the 12-month expiration clock during leave would be such a benefit, *Bailey*, No. 09-3539, slip op. at 7.

Next, Murray contends that AT&T violated the ADA by refusing to engage in the required interactive process over her heart and carpal tunnel conditions.  Specifically, she argues, AT&T refused to offer any possible accommodations for those conditions after it rejected her request for intermittent lunch breaks and special vacation privileges.  To establish a violation of the ADA, including a refusal to engage in the interactive process, Murray must show that she is qualified to perform the essential functions of the job with or without reasonable accommodation.  *See Winsley v. Cook Co.*, 563 F.3d 598, 603 (7th Cir. 2009); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).  An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance.  *EEOC v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 948-49 (7th Cir. 2001) (collecting cases); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir.

1999).  AT&T considered attendance to be an essential element of the job, allowing only 12 absence points annually.  Murray accumulated more than 18 absence points and substantially exceeded her FMLA balance, so it is difficult to see how she met the essential attendance element of her job.  In any case, we think that AT&T did engage in the interactive process.  It considered her request, explained its reasoning for not being able to accommodate it, and reminded her of another accommodation it was already making.  This was sufficient.  *See Mays v. Principi*, 301 F.3d 866, 870-71 (7th Cir. 2002); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000).

Finally, Murray argues that the district court improperly denied her various discovery requests.  We review discovery orders for abuse of discretion, *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009), and Murray must show prejudice from the denials, *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005).  The district court acted within its discretion in allowing only discovery that complied with Rule 56(f).  *Brill v. Lante Co.*, 119 F.3d 1266, 1275 (7th Cir. 1997); *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1001-02 (7th Cir. 1994).  Moreover, Murray has not explained how the discovery she sought, if answered, could have altered the outcome of this case.  In fact, she maintains that she submitted more than enough evidence for the district court to rule in her favor.  Thus, she cannot be prejudiced by the denial of discovery which she admits she did not need to succeed on her claim.  *See Allen v. Martin*, 460 F.3d 939, 943 (7th Cir. 2006); *Chambers*, 17 F.3d at 1002.

Murray raises a raft of other issues that we have considered but do not require further discussion.  And we need not address her arguments about the merits of her workers' compensation claims because the district court properly dismissed these without prejudice, declining to exercise supplemental jurisdiction.

Accordingly, we AFFIRM the judgment of the district court.