In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1665

LITTLE COMPANY OF MARY HOSPITAL,

*Plaintiff-Appellant,*

*v.*

KATHLEEN SEBELIUS, Secretary, U.S. Department of
Health and Human Services,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-C-6430—**Wayne R. Andersen**, *Judge.*

ARGUED SEPTEMBER 15, 2009—DECIDED NOVEMBER 24, 2009

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge.* In 2003, plaintiff-appellant, Little
Company of Mary Hospital (Little Company), requested
that their assigned Medicare financial intermediary
(Intermediary) reopen and reconsider several issues
in Little Company's cost report from 1998. When the
Intermediary reopened only one of the challenged issues,

Little Company appealed all of the challenged issues to the Provider Reimbursement Board (PRRB). The PRRB dismissed the appeal of the non-reopened issues. Little Company appealed the PRRB's dismissal to the district court. The district court granted summary judgment in favor of the defendant-appellee, the Secretary of Health and Human Services (Secretary). This appeal follows. For the reasons set forth below, we affirm the district court's grant of summary judgment.

## I. Background

### A. The Medicaid Reimbursement Process

Hospitals that participate in the Medicare program must enter into a provider agreement with the U.S. Department of Health and Human Services to receive Medicare reimbursement. Those hospitals participating in the Medicare program that serve a disproportionate share of low income patients are entitled to a Disproportionate Share Hospital (DSH) payment adjustment. The DSH payment adjustment requires the calculation of the disproportionate patient percentage. The disproportionate patient percentage is the sum of the Medicaid Fraction[1]

---

[1] The Medicaid Fraction is the number of hospital patient days for patients eligible for medical assistance under a State Medicaid plan but who are not entitled to Medicare Part I, divided by the total number of hospital patient days. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

and the Supplemental Security Income (SSI) Fraction.[2] *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi).

When filing for reimbursement from the Medicare program, the provider must first file an annual cost report with an assigned Intermediary. The Intermediary then conducts an audit, accounts for interim payments to the provider, and issues an initial "notice of program reimbursement" (NPR). The provider may appeal the initial NPR to the PRRB within 180 days if at least $10,000 is at issue. 42 U.S.C. § 1395oo(a). Upon appeal, the Secretary's delegate, the Administrator of the Centers for Medicare and Medicaid Services (CMS), may review the decision of the PRRB. If the provider is dissatisfied with the decision of the PRRB and the CMS Administrator, the provider may request that a federal district court review the decision. 42 U.S.C. § 1395oo(f)(1).

When a provider does not file a timely appeal of the initial NPR, the NPR is considered finalized. 42 C.F.R. § 405.1807 (2009). However, under 42 C.F.R. § 405.1885(a) (2004)[3]—a set of regulations separate from those governing

---

[2] The SSI Fraction is the number of hospital patient days for patients entitled to benefits under both Medicare Part A and the SSI program divided by the total number of hospital patient days for patients entitled to Medicare Part A. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

[3] In 2008 the Secretary substantively amended 42 C.F.R. § 405.1885. This amendment resulted in a significant change to the appeals rights of a provider after a reopening. Therefore,

(continued...)

the appeals process discussed above—the Intermediary may reopen specific findings on matters at issue within three years of the initial NPR based on a request by the provider or on its own initiative. At the close of the reopening, the Intermediary issues a revised NPR on the specific issues reopened. The parts of the NPR that the Intermediary did not reopen remain finalized in the initial NPR. With regards to the specific issues reopened, the provider has the rights of appeal discussed above. 42 C.F.R. § 405.1889 (2009).

## B.  The Medicaid Reimbursement Process In This Case

Little Company is a hospital that participates in the Medicare program and is entitled to a DSH payment adjustment. On September 12, 2000, Little Company's assigned Intermediary issued an initial NPR for Little Company's cost reporting period ending June 20, 1998. The NPR was finalized when Little Company failed to appeal to the PRRB or the CMS Administrator within 180 days. On September 5, 2003, Little Company submitted a request for reopening of the finalized 1998 NPR regarding the calculation of the Medicaid Fraction and the SSI Fraction. Shortly after this request, on November 3,

---

[3] (...continued)

throughout this opinion all citations to 42 C.F.R. § 405.1885 reference the regulation as it was in 2004, the year relevant to this case. All other references to the C.F.R. are to the current version, which has remained substantively unchanged since 2004.

2003, an email exchange occurred between two employees of the Intermediary regarding Little Company's 1998 cost report. The email stated, "Chris, I just realized that there are only Primary, Secondary and HMO supports. Can you please send supports for the SSI Eligible Days as well? Thank you, Mark K."

Almost exactly a year after this email exchange, on November 11, 2004, the Intermediary issued a Notice of Reopening. The Notice of Reopening stated:

> In accordance with this Regulation, we have determined that your cost report will be reopened for the following reason(s): The Intermediary notes that the Provider has requested a reopening to include Medicaid Additional Eligible Days (757) and Baby Additional Days (82) for the DSH computation.

The Notice of Reopening made no mention of reopening the SSI Fraction and the Intermediary did not issue a separate Notice of Reopening regarding the SSI Fraction. On November 17, 2004, the Intermediary issued a revised NPR with an adjusted Medicaid Fraction.

On January 26, 2005, Little Company appealed the revised NPR to the PRRB. Specifically, Little Company appealed the revised Medicaid Fraction and the failure to revise the SSI Fraction. On March 3, 2005, the Intermediary filed a jurisdictional challenge to Little Company's appeal of the failure to adjust the SSI Fraction. The Intermediary claimed the SSI Fraction was not reopened and therefore remained finalized from the NPR issued in 2000. On February 15, 2006, the PRRB sustained the Intermediary's challenge to Little Company's appeal of the SSI Fraction and dismissed the issue.

On November 27, 2006, Little Company filed suit in the Northern District of Illinois challenging the PRRB's jurisdictional decision. On October 18, 2007, Little Company filed a motion to permit discovery of decisions by the PRRB and CMS Administrator in similar administrative appeals. The district court denied this discovery motion, finding that judicial review of the PRRB's final decision on Little Company's appeal should be based solely on the certified administrative record.

Both parties filed for summary judgment. The district court granted summary judgment in favor of the Secretary. The district court found that the evidence in the record supported the PRRB's finding that the Intermediary did not reopen the SSI Fraction, and therefore, the PRRB properly dismissed that issue.

On appeal, Little Company challenges the district court's grant of summary judgment in favor of the Secretary and the district court's denial of the motion for discovery outside of the administrative record.

## II. Discussion

### A. Summary Judgment

We review a district court's grant of summary judgment de novo. *Argyropoulous v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Summary judgment is proper where "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

As a preliminary matter, Little Company challenges the district court's grant of summary judgment by arguing that the district court granted too much deference to the PRRB's decision below. The district court indicated that it reviewed the PRRB's decision under the standard of review set forth in the Administrative Procedure Act (APA). The APA requires that an agency's decision be set aside only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with the law. *See Edgewater v. Bowen*, 857 F.3d 1123, 1129 (7th Cir. 1989). This is the proper standard of review for district courts reviewing decision of the PRRB regarding reimbursement.

Little Company challenges this degree of deference based on this court's statement in *Edgewater* that "a lesser degree of deference is required when reviewing the secretary's actions under the Medicare Act's reimbursement provisions." 857 F.2d at 1130. However, reliance on this statement is misplaced. This statement in *Edgewater* references a series of cases where we found that the "Medicare statute specifically circumscribes the Secretary's discretion to define 'reasonable cost'." *See St. James Hospital v. Heckler*, 760 F.2d 1460 (7th Cir. 1985); *St. Francis Hospital Center v. Heckler*, 714 F.2d 872 (7th Cir. 1983); *Northwest Hospital, Inc. v. Hospital Services Corp.*, 687 F.2d 985 (7th Cir. 1982); *St. John's Hickey Memorial Hospital, Inc. v. Califano*, 599 F.2d 803 (7th Cir. 1979). These cases reason that the highly specific language in the Medicare Act regarding "reasonable cost" limits the amount of deference courts should grant to the Secretary's interpretation of that term. However, this court has never

disavowed the APA standard of review for Medicare provider reimbursement decisions more broadly. *See Edgewater*, 857 F.2d at 1129 ("We defer to the decision of the Secretary (acting through the PRRB) unless it is found to be arbitrary, capricious, or not in accordance with the law."). As is true of deference to any decision by an administrative agency, this deference is limited by the clear meaning of the statute as revealed by its language, purpose, and history. *Id.* However, Little Company does not advance any argument that the plain language of the statute and regulations mandate an outcome different from what occurred in the district court.

The parties agree that whether the district court properly granted summary judgment hinges on whether the Intermediary reopened the SSI Fraction when it reopened the Medicaid Fraction. An Intermediary's decision to reopen an annual report is issue-specific. 42 C.F.R. § 405.1885(a) (2004) ("A determination of an Intermediary officer . . . may be reopened with respect to findings on matters at issue in such determination or decision"). The Secretary argues, and the district court agreed, that the Intermediary did not reopen the SSI Fraction and therefore the PRRB, and subsequently the district court, did not have jurisdiction to review the lack of adjustment of the SSI Fraction. Based on *Your Home Visiting Nurse Services v. Shalala*, 525 U.S. 449 (1999), if the Intermediary chose not to reopen the SSI Fraction, that decision is not appealable and the initial SSI Fraction determination must stand unchallenged. In *Your Home*, the Supreme Court upheld the Secretary's interpretation of the Medicare regulations: "A refusal by

the Intermediary to grant a reopening request by the provider is not appealable to the Board, pursuant to 42 C.F.R. § 405.1885(c)." 525 U.S. at 452. The Court found it instructive that "42 C.F.R. § 405.1889 says that an Intermediary's affirmative decision to reopen and revise a reimbursement determination 'shall be considered a separate and distinct determination' to which regulations authorizing appeal to the Board are applicable; but it says nothing about appeal of a refusal to reopen." *Id.* at 453. Therefore, based on the regulations and settled Supreme Court precedent, the PRRB, and subsequently the district court, do not have jurisdiction to hear an appeal of the SSI Fraction if the Intermediary did not reopen it.

However, *Your Home* offers no guidance on what factors the PRRB, and subsequently the district court, should consider when distinguishing between situations where the Intermediary did not reopen a given issue and where the Intermediary did reopen an issue but simply did not adjust the challenged issue. Little Company argues that *Your Home* is not applicable here because the Intermediary did reopen both fractions but only chose to adjust the Medicaid Fraction. They urge this court to focus on *Edgewater Hospital v. Bowen*, 857 F.2d 1123 (7th Cir. 1989). In *Edgewater* we held that simply because the Intermediary did not adjust an issue does not mean that the Intermediary did not reopen that issue. 857 F.2d at 1136-37. Little Company attempts to extend *Edgewater* to stand for the proposition that a court should consider all items challenged by the provider to be reopened if the Intermediary reopens any issue

challenged by the provider. This reading of *Edgewater* overstates its holding. In *Edgewater* we found, based on the specific facts involved in that case, the reopening was a reconsideration of all cost items challenged by the provider. However, *Edgewater* does not stand for a broad standard requiring courts to look to the items challenged to determine what issues the Intermediary reopened. Rather, in *Edgewater*, we looked to the specific affirmative actions the Intermediary took regarding the four challenged items to make the fact-specific determination that the Intermediary did reopen all four items. *Id.* at 1135. We reasoned that the following affirmative actions amounted to a reopening: (1) the Intermediary reopened the first NPR; (2) the Intermediary sent Edgewater a letter on March 22, 1984 explaining that it would not change three items but had been persuaded to allow the fourth claim; and (3) the Intermediary sent the second NPR with the revised cost reports incorporating the adjustment. *Id.* We went on to explain, "the Intermediary acknowledged that it decided not to change three of the cost items. That decision itself was a reconsideration, an affirmative action . . . to re-examine or question the correctness of a determination or decision otherwise final." *Id.* at 1136.

In this case, the Intermediary did not take affirmative actions that would demonstrate it reopened the SSI Fraction. The Intermediary took the affirmative step of sending a reopening notice regarding the Medicaid Fraction, but did not take any sort of similar affirmative action regarding the SSI Fraction. Little Company argues that this silence regarding the SSI Fraction is not

dispositive because a lack of adjustment does not equate to a lack of reopening. However, the reopening notice was not a notice of adjustment on any issue. Instead, the reopening notice was the formal statement of what issue the Intermediary had agreed to reopen and reconsider based upon Little Company's request. Therefore, unlike the Intermediary's decision in *Edgewater* to reopen the entire first NPR, the facts here indicate the Intermediary decided to reopen the NPR only with respect to the Medicaid Fraction. Furthermore, unlike the Intermediary in *Edgewater*, which indicated that it examined all four issues upon reopening but chose to adjust only one, the Intermediary in this case made no representation that they examined the SSI Fraction.

Little Company also argues that the district court placed too much emphasis on the Intermediary's silence regarding the SSI Fraction in the written explanation of the revised NPR. Little Company points to 42 C.F.R. § 405.1887, requiring the Intermediary to explain only its decision to make revisions, not its reopening decisions, to support its argument that the Intermediary's silence is not determinative. However, in addition to requiring the Intermediary to explain any revisions, 42 C.F.R. § 405.1887 explicitly states, "All parties to any reopening described above shall be given written notice of the reopening." Little Company's argument ignores this requirement that the Intermediary provide written notice of the reopening. In this case, the Intermediary provided written notice of its intent to reopen the Medicaid Fraction but did not provide written notice of its intent to reopen the SSI Fraction. This silence in the

reopening notice indicates that the Intermediary did not reopen the SSI Fraction.

Finally, Little Company points to the email exchange in late October and early November of 2003 as affirmative evidence that the Intermediary reopened the SSI Fraction. Because this email discusses collecting the data relied on for the SSI Fraction determination, this email does raise some questions as to whether the Intermediary reconsidered the SSI Fraction. However, these emails were sent more than a year before the Intermediary decided to reopen any part of the NPR. When considered with the Intermediary's Notice of Reopening, which does not list the SSI Fraction as an issue to be reopened, this email exchange does not amount to an affirmative action sufficient to consider the issue reopened. This email exchange merely indicates that the Intermediary gathered information to decide whether to reopen the SSI Fraction. To consider such information gathering a sign that the Intermediary reopened the SSI Fraction would force Intermediaries to choose between blindly making reopening decisions, refusing to reopen any issue in a reopening request, or granting providers a way to circumvent the 180-day statutory time limit to appeal by requesting a reopening.

The Intermediary in this case followed the proper procedure when dealing with Little Company's reopening request. First, the Intermediary considered which, if any, issues should be reopened. Upon making that decision, the Intermediary issued a Notice of Reopening specifically informing Little Company that the

Medicaid Fraction was being reopened. Finally, by not informing Little Company that they intended to reopen the SSI Fraction, the Intermediary effectively denied that reopening request.

## B. The District Court's Denial of Little Company's Discovery Motion

In addition to challenging the district court's grant of summary judgment, Little Company claims that the district court erred by not permitting discovery of the PRRB's precedent in similar cases and any affirmative actions taken by the Intermediary to reconsider the SSI Fraction. We review a district court's denial of discovery under an abuse of discretion standard. *Walker v. Sheanhan*, 526 F.3d 973, 977-78 (7th Cir. 2008). As a general rule, under the APA, review of an agency's decision is confined to the administrative record to determine whether, based on the information presented to the administrative agency, the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Smith v. Office of Civilian Health & Med. Program of the Uniformed Services*, 97 F.3d 950, 954-55 (7th Cir. 1996).

In denying Little Company's request for discovery of the PRRB's decisions in similar cases, the district court applied the general rule that discovery outside of the administrative record is inappropriate. Additionally, the district court reasoned that discovery of decisions in similar cases would not be relevant to the case at hand and would inject collateral issues into the case. Little Company

argues that their situation falls within an exception to the general rule. We have recognized an exception to this general rule when "discovery is . . . necessary to create a record without which the challenge to the agency's action cannot be evaluated." *See USA Group Loan Service, Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996). However, this court has rarely found this exception to apply and has generally upheld the rule that review of an administrative decision should be confined to the administrative record. *See id.* (holding this exception inapplicable despite the court's recognition that the record was lacking certain information because of the nature of the underlying proceedings). The district court did not abuse its discretion in finding that this exception did not apply and rejecting Little Company's discovery request.

With respect to the district court's denial of Little Company's second discovery request, plaintiff-appellant never requested discovery of the Intermediary's actions regarding its reopening decision. Instead, Little Company first raised this issue in their response to the Secretary's Motion for Summary Judgment. The district court made no explicit finding on this request for discovery, but did implicitly rule on this issue by granting summary judgment in favor of the Secretary. Little Company argues that the record is incomplete because the record before the PRRB, which is the record before the district court, lacks any evidence of the affirmative actions the Intermediary may have taken in making the reopening determination. However, this argument fails to recognize that the district court's role is to review the decision of the PRRB based on the evidence presented to the PRRB. *See Smith*,

97 F.3d at 955. Little Company admits that it is seeking information that was not before the PRRB, and that it did not seek to introduce before the PRRB, but does not explain how obtaining this information would assist the district court in evaluating the decision of the PRRB. The district court did not abuse its discretion in denying this request for discovery.

### III. Conclusion

We agree with the district court that the evidence in the record supports the PRRB's dismissal of Little Company's challenge to the SSI Fraction. For the foregoing reasons, we AFFIRM the district court's grant of summary judgment and denial of Little Company's two discovery motions.