In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1554

CITIZENS FOR APPROPRIATE RURAL
ROADS, et al.,

*Plaintiffs-Appellants*,

*v.*

ANTHONY FOXX, in his official capac-
ity as Secretary of the United States
Department of Transportation, et. al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District District of Indiana, Indianapolis Division.
No. 11-CV-1031— **Sarah Evans Barker**, *Judge*.

ARGUED OCTOBER 27, 2015 — DECIDED MARCH 3, 2016

Before KANNE, *Circuit Judge,* ROVNER, *Circuit Judge,* and
BRUCE, *District Judge.*[*]

---

[*] Of the Central District of Illinois, sitting by designation.

BRUCE, *District Judge*. This case involves the extension of Interstate 69 (I-69) in Southern Indiana. The extension, which will connect Evansville and Indianapolis, has evolved over several decades and is scheduled to be completed in the coming years.  Plaintiffs filed a complaint on August 1, 2011, raising several challenges to the extension. The district court dismissed part of Plaintiffs' complaint when ruling on Defendants' motion to dismiss, and granted summary judgment in favor of Defendants on all other counts. We affirm.

## I. BACKGROUND

The first study of the I-69 extension between Evansville and Indianapolis was initiated in 1944. In the 1990s, the extension gained new life with the passage of two Acts of Congress: The Intermodal Surface Transportation Act of 1991, which designated a potential new route from Indianapolis to Memphis, Tennessee, via Evansville as a "high priority corridor" for future development; and the Transportation Equality Act for the 21st Century, which designated the current extension as part of I-69.

As the project progressed, the Federal Highway Administration (FHWA) reviewed the I-69 extension and divided the project into two schematic "tiers." In Tier 1 of the project, the FHWA and the Indiana Department of Transportation (INDOT) reached several broad decisions about the goals of the project, its scope, and the general geographic corridor in which construction would take place. They selected "Alternative 3C"–one of the 12 routes that had received consideration–as the path the new interstate would take between Evansville and Bloomington via a newly-constructed corridor

and an upgraded portion of State Road 37 between Bloomington and Interstate 465 in Southwestern Indianapolis. Tier 2 was divided into six sections, each corresponding to a discrete geographic stretch of the highway project, with each portion to receive its own Tier 2 environmental analysis.

FHWA and INDOT issued a Tier 1 "Record of Decision" (ROD), which finalized their action with respect to that stage of the project, on March 24, 2004.[1] After the plans were finalized, planning and subsequent construction work on the six sections of Tier 2 continued steadily. At the time of oral argument in this case, counsel for Defendants-Appellants (hereinafter "Defendants") stated that ninety-percent of the work on the extension had been completed.

The portion of the I-69 project that is primarily at issue in this case is Tier 2, Section 4. Pursuant to the National Environmental Policy Act (NEPA) and other statutory prerequisites, FHWA and INDOT issued a Draft Environmental Impact Statement (DEIS) for Section 4 on July 23, 2010. A Final Environmental Impact Statement (FEIS) was issued on July 13, 2011. And a ROD was issued on September 8, 2011.[2]

The agencies selected the final route and construction plan for Section 4 after reviewing some 48 options available (within the constraints established by the Tier 1 ROD). In doing so, the agencies produced a record reflecting their consideration of the plan's impact on historic sites, geological formations, and air

---

[1] In 2007, the district court upheld the Tier 1 decision against claims from numerous plaintiffs including the Plaintiffs-Appellants in this case. See *Hoosier Environmental Council v. United States Department of Transportation*, 2007 WL 4302642 (S.D. Ind. December 10, 2007).

[2] The original complaint in the underlying case was filed one month and seven days earlier, on August 1, 2011.

quality, among other factors. Pursuant to its obligations under Section 7 of the Endangered Species Act, the United States Fish and Wildlife Service engaged in consultation and issued a Biological Opinion (BiOp) regarding the possible impact of the project's tree-clearing on the endangered Indiana bat. Consultation was then reinitiated, and a revised BiOp, which addressed the issue of "White-Nose Syndrome"–an affliction affecting a large number of bats in the target area–issued for both Tier 1 and Tier 2 .

Plaintiffs-Appellants (hereinafter "Plaintiffs") filed a lawsuit in the District Court for the Southern District of Indiana on August 1, 2011. On January 10, 2012, Plaintiffs filed a Motion for Leave to File an Amended Complaint. That motion was granted on March 27, 2012, and an amended complaint was filed instanter. Defendants filed a partial motion to dismiss on February 2, 2012. Plaintiffs did not contest the motion. The court granted the partial motion to dismiss, and dismissed counts 3, 4, 5, 6, and 8 in their entirety.[3] After a lengthy period of inactivity by Plaintiffs, including several missed case management deadlines, the district court directed Plaintiffs to show cause as to why the entire case should not be dismissed for failure to prosecute. The case was not dismissed and both sides filed motions for summary judgment.[4]

The district court ruled on the motions for summary judgment on March 31, 2014. The court granted Defendants' motion for summary judgment on all remaining counts of the Amended Complaint and denied Plaintiffs' partial motion for

---

[3] Plaintiffs did not contest the dismissal until over a year and a half after the order and only after the district court had granted summary judgment in favor of Defendants. This is just one example of Plaintiffs' failure to timely prosecute the case at the district court level.

[4] Plaintiffs' motion was only a partial motion for summary judgment on counts 1, 2, 7, 11, 13, 17, and 18.

summary judgment. Plaintiffs now appeal the district court's Order granting Defendants' motion to dismiss as it relates to Count 8 and the court's March 31, 2014 Order and Judgment, arguing that the district court erred by: (1) granting summary judgment to Defendants on Counts 7, and 13 through 18; (2) dismissing in its entirety Count 8; (3) not granting relief based on Plaintiff's allegations of fraud on the court and violations of the duty of candor; (4) ruling inappropriately on evidentiary issues; and (5) refusing to allow Plaintiffs additional discovery under Rule 56(d).

## II. ANALYSIS

### A. Summary Judgment on Counts 7, 9, and 13-18

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review a district court's grant of summary judgment de novo. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). In doing so, we must construe all facts and reasonable inferences in favor of the nonmoving party. *Id.* However, our favor toward the nonmoving party does not extend to drawing inferences that are supported only by speculation or conjecture. *Id.* Therefore, in order to succeed on appeal, Plaintiffs must do more than raise some metaphysical doubt as to the material facts; Plaintiffs must come forward with specific facts showing that there is a genuine issue for trial. See *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corporation, et al.*, 475 U.S. 574, 586-87 (1986).

Here, Plaintiffs claim that the district court erred in granting summary judgment to Defendants on Counts 7, 9[5], and 13

---

[5]   Plaintiffs argued in the body of their brief that summary judgment on

(continued...)

through 18. Plaintiffs' Partial Motion for Summary Judgment had requested that the district court grant summary judgment for Plaintiffs on Counts 1, 2, 7, 11, 13, 17, and 18.[6] Plaintiffs did not advance any arguments regarding Counts 9, 14, 15, and 16. Defendants' Motions for Summary Judgment requested that the court grant summary judgment for Defendants on all remaining counts. Plaintiffs responded to Defendants' motions; however, they again advanced no arguments and made no response to Defendants' arguments related to Counts 9, 14, 15, and 16.[7]

The district court granted summary judgment in favor of Defendants on all counts. In so ruling, the court found that Counts 9 and 13 through 18 were unripe. The court also concluded that those counts were waived since Plaintiffs never responded to Defendants' arguments regarding ripeness. As for Count 7, the court discussed the merits and concluded that summary judgment in favor of Defendants was appropriate.

This court can affirm the district court's grant of summary judgment for any reason supported by the record. *Wagg v.*

---

[5] (...continued)
Count 9 was inappropriate; however, Plaintiffs did not mention this count in their Issue Statement or in the Table of Contents. This is yet another example of the lack of diligence Plaintiffs' counsel has exhibited in this matter. While environmental cases such as these can be complex, it is the duty of the party bringing a lawsuit or an appeal to ensure that the case is properly presented.

[6] Plaintiffs' motion originally stated it was also seeking summary judgment on Count 16. However, Plaintiffs provided no argument on that count and in the conclusion of their motion they did not request summary judgment on Count 16.

[7] Plaintiffs did argue that they were entitled to additional discovery before responding to Count 9; however, they did not address the merits of that count.

*Village of Thorton*, 604 F.3d 464, 467 (7ᵗʰ Cir. 2010). For the reasons that follow, we find that summary judgment in favor of Defendants was appropriate.

*Count 7*

Count 7 alleged that Defendants violated the NEPA by failing to prepare a SEIS for Tier 2, Section 4 to address: (1) the 2009 vehicle fleet data; (2) the impact of the project on the endangered Indiana bat; and (3) the impact of the project on certain historic sites. The determination as to whether a SEIS is required is left to the discretion of the agency. *State of Wisconsin v. Weinberger*, 745 F.2d 412, 417 (7ᵗʰ Cir. 1984). We review an agency's determination not to prepare a SEIS under Section 706(2)(A) of the Administrative Procedure Act (APA). *Id.* That section allows a court to set aside a final agency action only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). An agency's decision regarding the preparation of a SEIS is granted considerable deference and we will only find that an agency acted arbitrarily or capriciously if new information provides a seriously different picture of the environmental landscape such that another hard look is necessary. *Weinberger*, 745 F.2d at 418.

Plaintiffs first claim that the issuance of the 2009 vehicle fleet data required a SEIS and Defendants' decision to use the 2004 data was arbitrary and capricious. Pursuant to the Clean Air Act, Indiana agencies performed a "fleet mix" study in 2004 and a new study in 2009 to determine air quality standards for Greene County, Indiana because it was considered a "maintenance area." The 2009 study showed an older mix of cars than had been expected. This meant that pollution levels per vehicle were projected to be higher than that determined in the 2004 study. Defendants, acting in consultation, determined that the 2009 data should not be used until it had been quality assured. Therefore, Defendants used the 2004 data

when formulating the Tier 2, Section 4 EIS and ROD since the quality assurance analysis on the 2009 data was not completed until October 2011.[8]

Plaintiffs attempt to support their argument that Defendants' decision was arbitrary and capricious by pointing to evidence from the record that shows Defendants were concerned with the 2009 data. Emails in the record do demonstrate that Defendants were aware the 2009 data might jeopardize Greene County's compliance with the CAA. One email even urged local authorities to complete their new transportation plans before the 2009 data was finalized in order to avoid the problematic nature of the new study. However, even though the evidence shows that Defendants were concerned with the 2009 data, Plaintiffs have presented no evidence to establish that the 2009 data would have resulted in non-compliance. Further, evidence presented by Defendants shows that Greene County has since been updated by the Environmental Protection Agency to an "attainment area." This evidence demonstrates that the air quality in Greene County improved and would rebut any evidence by Plaintiffs that there was a significant negative change in air quality that would require a SEIS.

Further, the record shows that Defendants knew about the 2009 data and decided to use the 2004 data after taking a hard look at the information. Their decision was made following a conclusion that the 2009 data may contain "systemic deficiencies" and should not be used until it was quality assured. This was not an unreasonable decision, and it was one that was supported by the law since the 2009 data was not official at the time the analysis began. See 40 C.F.R. § 93.110(a) (the conformity determination "must be based upon the most recent planning assumptions in force at the time the conformity

---

[8] The ROD for Section 4 was issued on September 8, 2011.

analysis begins"). Therefore, we do not find any evidence in the record to support Plaintiff' contention that Defendants acted arbitrarily or capriciously. See *Weinberger*, 745 F.2d at 417 (an agency's decision will be upheld "under the arbitrary and capricious standard if the decision was based on a consideration of relevant factors ... and made on a rational basis").

Second, Plaintiffs alleged that a SEIS was required to deal with the impact of the project on the endangered Indiana bat. Plaintiffs claim that a 2013 article in a scholarly journal, which detailed the impact of White-Nose Syndrome on the Indiana bat, is proof that a substantial change had occurred and a SEIS was necessary. However, the article does not bear directly on the question at hand and only discusses the risks of the disease in general. We do not find that the article itself constitutes a substantial change requiring a SEIS. Plaintiffs also claim that Defendants and their contractors engaged in tree-clearing that violated the proposed action and substantially affected the Indiana bat. However, Plaintiffs have only provided evidence that one protected tree was felled by Defendants. Importantly, the record shows that a specialist investigated the fallen tree and determined that it had not been used as a "maternity tree" for the Indiana bat. Therefore, the impact of the one fallen tree was minimal or non-existent. Plaintiffs' evidence regarding White-Nose Syndrom is not sufficient and they have entirely failed to present any evidence that the removal of one tree impacted the Indiana bat in any way. Therefore, without evidence of substantial changes related to the Indiana bat, we cannot conclude that a SEIS was necessary.

Finally, Plaintiffs argued in their amended complaint that a SEIS was required to protect certain historic sites. However, Plaintiffs did not include this argument on appeal. Plaintiffs also failed to provide sufficient evidence in the district court to support their allegations with respect to significant changes made to historical sites located in Tier 2, Section 4. Without any

such evidence, we cannot conclude that Defendants were required to produce a SEIS based on historical sites.

We find that Plaintiffs have not presented sufficient evidence to establish a SEIS was required for any reason. Therefore, Defendants were entitled to summary judgment on Count 7 of Plaintiffs' amended complaint.

*Count 13*

Count 13 alleged that Defendants violated the CAA and the APA when they decided to use the 2004 vehicle fleet data and not the 2009 vehicle fleet data when preparing their CAA conformity determination for Greene County. We disagree for two reasons.

First, the law did not require Defendants to use to the 2009 data. At the time the conformity analysis began, and even at the time the ROD for Tier 2, Section 4 issued, the 2009 data was not finalized. Pursuant to 40 C.F.R. § 93.100(a), an agency must base its conformity determination "upon the most recent planning assumptions in force at the time the conformity analysis begins." Because the 2009 data was not finalized until October 2011, Defendants were under no lawful obligation to use it.

Second, the record clearly demonstrates Defendants' knowledge of the 2009 data and their decision not to use it. That decision was based on a concern that the data contained "systemic deficiencies." The record clearly shows that Defendants considered the relevant factors and made a rational decision. See *Weinberger*, 745 F.2d at 417. That decision is granted great deference. See *Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103 (1983) ("[w]hen examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential"). Therefore, we conclude that the record contains substantial evidence, un-rebutted by

Plaintiffs, that Defendants did not violate the CAA or APA when they chose to use the 2004 data. As such, summary judgment for Defendants on Count 13 was appropriate.

*Counts 17 and 18*

Counts 17 and 18 of the amended complaint alleged that Defendants concealed certain information in violation of the NEPA. While Plaintiffs make numerous allegations against Defendants, they have failed to provide sufficient evidence to back up their claims. We have said that summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Here, Plaintiffs have failed to produce sufficient evidence to support their allegation that Defendants concealed information in violation of the NEPA. Further, Plaintiffs have not provided sufficient evidence to support their position that Defendants should have accepted an alternative route. The record clearly shows that Defendants considered all relevant factors when deciding upon a route and made a rational decision. This is all that was required. See *Weinberger*, 745 F.2d at 417. Without sufficient evidence, and with a record showing that defendants were forthcoming with information and made rational decisions, we must conclude that summary judgment in favor of Defendants on Counts 17 and 18 is appropriate.

*Counts 9, 14, 15, and 16*

As noted above, Plaintiffs failed to offer any response to Defendants' request for summary judgment on counts 9, 14, 15, and 16. Rule 56-1 of the Local Rules of the Southern District of Indiana requires a party opposing summary judgment to include a section labeled "Statement of Material Facts in Dispute" that identifies the potentially determinative facts and factual disputes that the party contends demonstrates a disputed fact precluding summary judgment. The rules state that the district court will "assume that the facts claimed and

supported by admissible evidence by the movant are admitted without controversy except to the extent that the non-movant specifically controverts the facts in that party's 'Statement of Material Facts in Dispute.'" Local Rules of the Southern District of Indiana 56-1(f)(1)(A).

Here, Plaintiffs' Response fell far short of the requirements of Rule 56.1. Although their Response included a section entitled, "Statement of Facts," Plaintiffs did not make any effort to identify with specificity which factual issues were disputed. Instead, the statement read, in its entirety:

> Plaintiffs hereby incorporate by reference the Statement of Facts included in their Motion for Partial Summary Judgment on Counts 1, 2, 7, 11, 13, 17, and 18.

By only incorporating the facts relevant to Counts 1, 2, 7, 11, 13, 17, and 18, Plaintiffs failed to respond to or provide any facts specifically related to Counts 9, 14, 15, and 16. Further, Plaintiffs' Response did not even attempt to address the facts or arguments raised by Defendants that supported their request for summary judgment on Counts 9, 14, 15, and 16.

By failing to respond to the facts, the local rules make it clear that Defendants' facts are to be taken as they are represented in their motions. See *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922-23 (7th Cir. 1994). Therefore, because Defendants' facts established that summary judgment in their favor was appropriate for Counts 9, 14, 15, and 16, Defendants were entitled to summary judgment.

Further, by failing to respond in any way to any of the arguments advanced by Defendants regarding counts 9, 14, 15, and 16, Plaintiffs have waived their claims. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver"); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) ("Farris failed to respond to the

Government's argument in a Reply Brief, and accordingly, we find that Farris waived his [claim]"); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived").

Based on the above reasons, summary judgment in favor of Defendants on Counts 9, 14, 15, and 16 was appropriate.

### B. Motion to Dismiss, Count 8

Plaintiffs appeal the district court's order on Defendants' motion to dismiss which resulted in the dismissal of Count 8 in its entirety. Defendants' motion to dismiss only requested that the portions of Count 8 dealing with Tier 2, Section 3 be dismissed. However, when ruling on the motion, the district court dismissed Count 8 in its entirety, including the sections that dealt with Tier 2, Section 4. The district court's only stated reason for dismissal was that the counts related to Tier 2, Section 3 were untimely. This reasoning does not extend to the portions of Count 8 that dealt with Tier 2, Section 4. Therefore, because Defendants only requested a portion of Count 8 be dismissed and because the district court provided no reasons for dismissal of Count 8 as it related to Tier 2, Section 4, we conclude that the dismissal of Count 8, in its entirety, was error.

However, after a review of the record, we have determined that the error was harmless. An error is harmless if it does not affect a party's substantial rights. Fed. R. Civ. P. 61. Here, the district court noted in its order denying reconsideration that "[h]ad Count 8 not been dismissed by the Court in September 2012, then, we would have granted Defendants' motion for summary judgment as to Count 8 in March 2014 on grounds of unripeness." Because Defendants challenged all remaining Tier 2, Section 4 counts on ripeness grounds, there is no question

they would have challenged the remaining parts of Count 8 on that ground.

A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all. *Texas v. U.S.*, 523 U.S. 296 (1998). In the context of judicial review under the APA, a challenge to agency conduct is ripe only if it is filed after the final agency action. 5 U.S.C. § 704. The issuance of a ROD generally constitutes a final agency action. See *Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999); *Sierra Club v. U.S. Department of Energy*, 825 F.Supp.2d 142, 156-57 (D.D.C. 2011).

Here, Count 8 was originally filed on August 1, 2011. The ROD for Tier 2, Section 4 was not issued until one month and seven days later on September 8, 2011. Therefore, because Count 8 was filed before the ROD issued, it predated the final agency action and is therefore unripe. This is true even though Plaintiffs amended their complaint after the issuance of the ROD. Federal Rule of Civil Procedure 15(c)(1)(B) notes that an amendment to a complaint relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Because Count 8 of the amended complaint presented the same claim as Count 8 in the original complaint, Count 8 relates back and the amended complaint does not cure the ripeness issue.

We also do not agree with Plaintiffs that their challenge to Tier 2, Section 4 in Count 8 was ripe prior to the issuance of the ROD. Plaintiffs allege that allegations of bad faith with respect to an environment impact statement are ripe once the bad faith occurs. To support their position, Plaintiffs point to a few sentences of dicta in *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726 (1998). Those sentences seem to suggest that it may be

possible to bring a claim related to an environmental impact statement at any point if the allegation is that the proper procedure was not followed. *Id.* at 737. Importantly, the statement made by the Supreme Court was not relevant to the case before it. Further, courts have been wary about the statement and the Supreme Court's intention. See *New York v. U.S. Army Corps of Engineers*, 896 F.Supp.2d 180, 196 (E.D.NY 2012)("the court does not believe the Supreme Court would intend to attempt to abrogate its prudential ripeness case law as to NEPA claims in a few sentences of dicta"). This court agrees with the district court in *New York v. U.S. Army Corps of Engineers* and concludes that the few sentences in *Ohio Forestry Association* were not meant to overturn the clear mandate of 5 U.S.C. § 704 which states that a challenge to agency conduct is ripe only if it is filed after the final agency action.

Because Count 8 was filed before the ROD issued as to Tier 2, Section 4, the parts of Count 8 which deal with that section were unripe. Therefore, had that count not been dismissed in its entirety, the remainder would have been dismissed at the summary judgment stage. As such, the district court's error was harmless and Plaintiffs cannot obtain relief on Count 8.

### C. Fraud on the Court

Plaintiffs claim that the district court erred by not granting relief based on their allegations of fraud on the court and a violation of the duty of candor. Fraud on the court occurs only in the most extraordinary and egregious circumstances and relates to conduct that might be thought to corrupt the judicial process itself, such as where a party bribes a judge or inserts bogus documents into the record. *Oxxford Clothes XX, Inc. v. Expeditors Intern. Of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997). A party alleging fraud on the court must support their allegations with a meaningful evidentiary showing. *National Archives and Records Administration v. Favish*, 541 U.S. 157, 175 (2004).

Here, Plaintiffs claim that Defendants were guilty of fraud on the court and a violation of the duty of candor by hiding evidence related to Defendants' decision to use the 2004 vehicle fleet data. However, Plaintiffs have failed to support these allegations with any admissible evidence. The only evidence Plaintiffs have produced is an affidavit from their own attorney which states that an anonymous employee of Defendants informed Plaintiffs' attorney that a supervisor employed by Defendants told the first employee that the supervisor had not used the 2009 vehicle fleet data in a direct attempt to get around environmental regulations. However, as that jumbled sentence illustrates, Plaintiffs' attorney's affidavit is hearsay within hearsay and is not admissible. See *Haywood v. Lucent Tech. Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (holding that, while statements by supervisor might constitute non-hearsay admissions on behalf of defendant, plaintiff's own version of the statements which were based on an employee's version of the statements, is not admissible). Further, evidence related to Defendants' desire not to use the 2009 data was contained within the administrative record. This included an email which urged local authorities to complete their transportation plans before the 2009 data was finalized. Therefore, any argument that Defendants were attempting to conceal evidence related to their decision not to use 2009 data is unconvincing. Simply put, Plaintiffs have produced no evidence that would warrant a belief by a reasonable person that Defendants engaged in fraud or inappropriate behavior. Therefore, the district court did not err in refusing to grant Plaintiffs relief based upon their allegations of fraud and a violation of the duty of candor.

Plaintiffs have also argued that the district court erred by not holding an evidentiary hearing on their allegation of fraud and a violation of the duty of candor. As noted above, Plaintiffs offered no admissible evidence to support their position. Instead, Plaintiffs' entire argument was based upon inadmissi-

ble hearsay and speculation. Without any suggestion that an evidentiary hearing would have produced evidence to support Plaintiffs' position, there is no reason to find that the district court erred in any way when it decided an evidentiary hearing was not necessary.

### D. Evidentiary Issues

Plaintiffs argue that the district court erred when ruling on a number of evidentiary issues including: (1) concluding that Plaintiffs' counsel's affidavit was inadmissible; (2) quashing subpoenas; and (3) failing to hold evidentiary hearings. We will address each issue in turn.

First, this court has already concluded that Plaintiffs' counsel's affidavit was hearsay. As noted above, the affidavit stated that an anonymous employee of Defendant had informed Plaintiffs' counsel that another anonymous employee had made a statement related to Defendants' decision not to use the 2009 vehicle fleet data. Counsel's affidavit is clearly hearsay within hearsay and does not fit into any exception to the hearsay rule. See Fed. R. Evid. 801, 802; *Haywood*, 323 F.3d at 533. Therefore, the district court did not err when it refused to consider Plaintiffs' counsel's affidavit.

Second, we do not find that the district court abused its discretion when quashing subpoenas. See *U.S. v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992) (we review a district court's decision to quash subpoenas for an abuse of discretion). In an order dated February 2, 2012, the district court quashed nine subpoenas.[9] After our review of the record, we conclude that

---

[9] On appeal, Plaintiffs have not specified which of the nine subpoenas they believe were erroneously quashed. Instead, they simply state that the district court "erred in quashing Plaintiffs' subpoenas that were intended to compel the testimony of these key adverse witnesses." Nevertheless, we find that the district court did not abuse its discretion in quashing any of

(continued...)

the district court properly applied the factors established in *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7ᵗʰ Cir. 2002), when it determined that the subpoenas imposed an undue burden. The court's determination was made after concluding that Plaintiffs: (1) had months to conduct discovery and seek the testimony and documents it sought through the subpoenas; (2) failed to counter the affidavits provided by Defendants which claimed that it would be nearly impossible to search for and produce the requested documents in the time provided; and (3) failed to establish that the requested evidence was material. All of these findings were supported by the record. Therefore, we do not find that the district court abused its discretion when it quashed Plaintiffs' subpoenas.

Finally, Plaintiffs have offered no precedent and virtually no argument to support their position that they were entitled to an evidentiary hearing on any of the above issues. The following is Plaintiffs' entire argument on appeal regarding the court's failure to hold an evidentiary hearing:

> The District Court was also in error in refusing to hold an evidentiary hearing in which these witnesses could testify.

The statement is speculative and conclusory. Because Plaintiffs are not entitled to evidentiary hearings in APA cases (see *Cronin v. U.S. Department of Agriculture*, 919 F.2d 439, 443-444 (7ᵗʰ Cir. 1990)) and because Plaintiffs have failed to offer any argument to support their position, we must conclude that the district court was well within its discretion when it refused to hold an evidentiary hearing on any of the above issues.

---

[9] (...continued)
the subpoenas.

### E. Additional Discovery

Plaintiffs claim that the district court erred when it refused to allow additional discovery pursuant to Federal Rule of Civil Procedure 56(d). We review a district court's denial of discovery for an abuse of discretion. *Little Co. of Mary Hospital v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009). Generally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record. *Id.* An exception exists if a plaintiff seeking discovery can make a significant showing that it will find material in the agency's possession indicative of bad faith or an incomplete record. *Air Transport Association of America, Inc. v. National Mediation Board*, 663 F.3d 476, 487-88 (D.C. Cir. 2011). In addition, when a party is requesting discovery pursuant to Rule 56(d), that party must not only meet the above requirements for APA cases, but must also show that additional facts would be necessary to avoid summary judgment and that they had been diligent in pursuing discovery. *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012).

The district court based its decision primarily on a finding that Plaintiffs did not demonstrate a need for additional discovery and that they were not diligent in their pursuit of discovery.[10] After a thorough review of the record, we do not believe these findings were an abuse of discretion. First, the additional discovery requested by Plaintiffs related to an alleged whistleblower's testimony which would have only supplemented evidence that already existed in the administrative record. Therefore, Plaintiffs failed to show a need for the evidence. More importantly, Plaintiffs actions in the district court showed that they were anything but diligent in their

---

[10] The court also concluded, very briefly, that Plaintiffs had not made a strong showing that Defendants' misconduct entitled them to seek review beyond the administrative record.

pursuit of discovery. The district court set two deadlines in July 2012 to allow Plaintiffs to demonstrate why the administrative record was insufficient. Plaintiffs ignored both deadlines. As the case progressed, the dilatory nature of Plaintiffs' counsel's conduct lead the district court to order Plaintiffs to show cause as to why the entire suit should not be dismissed for failure to prosecute. The court noted that Plaintiffs behavior constituted "frustrating and persistent ... tardiness." These are but a few examples from the record demonstrating Plaintiffs' failure to properly handle the case at the district court level. These examples demonstrate that Plaintiff was not diligent in pursuing discovery.

A party who fails to comply with deadlines related to discovery or otherwise forestalls prosecution of their own case is not entitled to seek additional discovery when the opposing side moves for summary judgment. See *Convertino*, 684 F.3d at 99. The record shows that Plaintiffs had every opportunity to seek discovery prior to the summary judgment stage. Plaintiffs failure to comply with court deadlines and seek discovery prior to summary judgment was their own choice and they must now live with the consequences. Based upon a thorough review of the record, it was not an abuse of discretion for the district court to conclude that Plaintiffs were not entitled to additional discovery.

## III. CONCLUSION

For all of the reasons stated above, the district court's orders granting Defendants' motions to dismiss and summary judgment are AFFIRMED.