┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 8, 2021[*]
Decided November 10, 2021

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 19-2925

| | |
|---|---|
| JAMES R. WASHINGTON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-208-bbc |
| RENEE SCHUELER, *et al.*, *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

James Washington, a Wisconsin inmate who was prescribed orthotic insoles for his feet, sued a nurse and two administrators at the prison over a delay in receiving the insoles. Washington did not seek timely discovery and supplied no evidence suggesting

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that the nurse or administrators were behind the delay, so the district court rightly entered summary judgment for the defendants. We thus affirm.

We present the facts in the light most favorable to Washington. *See Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019). Washington sought treatment in 2017 for his bunions, hammer toes, and flat feet. In early January, the prison sent him to an outside podiatrist, who provided custom orthotic insoles and recommended that he wear them inside extra-wide, athletic shoes such as New Balances instead of the standard, state-issued shoes. A nurse at the prison did not immediately record this recommendation in Washington's medical chart, and someone (Washington does not say who) in the health unit lost the provided insoles before Washington received them. About 23 days later, Washington returned to the podiatrist who provided another pair of insoles and again recommended athletic shoes, now mentioning Nikes. This time, the nurse recorded the recommendations for orthotics and "athletic-style shoes." The prison's physician then authorized Washington to receive the insoles; the authorization said nothing about athletic shoes, but Washington already owned two pairs of athletic Nike shoes.

Washington eventually received the insoles, but he asserts that he encountered two problems. First, he says, after the prison's doctor approved the custom insoles, someone again misplaced them for months. Second, he asserts that when he received the insoles, they did not fit the medical shoes that the prison gave him. Before this occurred, the prison had received another recommendation from the podiatrist that it provide him with him extra-wide, athletic shoes such as New Balances. It referred this request to a committee (composed of medical and non-medical personnel) that decides when prisoners can receive special products from an outside vendor. The committee decided that Washington did not need the extra-wide New Balances to accommodate his insoles, because the insoles should fit in state-issued medical shoes. Washington received those shoes and insoles a few weeks later (eight months after the original recommendation). But, Washington says, the insoles did not fit well in those state-issued medical shoes.

At the outset of the suit, the district court issued a scheduling order. As relevant to this appeal, Washington had sued the nurse (who initially omitted from his medical chart the recommendation for insoles) and two administrators (whom he accuses of barring the purchase of brand-name athletic shoes). Recognizing Washington's pro se status, in the scheduling order the court explained his duties under Rule 56 of the Federal Rules of Civil Procedure and the deadlines. It emphasized that "Rule 56 is important, so you should read it carefully, even before a summary judgment is filed

…." It warned Washington that he would have thirty days to respond to a motion for summary judgment, although the scheduling order allowed for discovery up to six months after the deadline for moving for summary judgment. The court explained that a litigant could not extend the time to respond to the motion for summary judgment in order to seek discovery unless his failure to obtain the information sooner was "somebody else's fault."

Despite these warnings, when the defendants moved for summary judgment seven months later (on the last day allowed), Washington moved to extend his time to respond so that he could start discovery. *See* FED. R. CIV. P. 56(d). He asserted that his legal papers were stolen three months earlier and, with extra time, he could now begin to seek medical records, information about the committee and how often it granted shoe requests, details about shoes in the approved catalog, and personnel files. The court denied the motion, explaining that it had carefully warned Washington that, without good cause, it would not extend the deadline to respond to a motion for summary judgment, and Washington had no good excuse for not starting discovery sooner.

The court later entered summary judgment for the nurse and two administrators. It began with the nurse and the claim that she culpably failed to record the podiatrist's first recommendation in January. This failure, the court acknowledged, delayed action on insoles and athletic shoes for 23 days. But Washington had not alleged, let alone shown, that this delay harmed him. The court then turned to the nurse's failure to record the podiatrist's suggestion (at the second visit) that he receive Nike shoes. It concluded that no reasonable jury could find the nurse liable for specifying instead that he should receive "athletic-style shoes," because no evidence showed that non-Nike athletic shoes would harm him. The court then addressed the two administrators. It explained that no evidence suggested they maintained a policy of barring prisoners from ordering medically necessary shoes from outside vendors or that Washington's request had been denied under such a policy.

On appeal, Washington first challenges the denial of his motion for more time to respond to the motion for summary judgment. He repeats that his legal documents had been stolen three months before the defendants moved for summary judgment and that discovery would "expose possible fraudulent assertions of fact." But for three reasons, the district court reasonably denied the motion for more time.

First, Washington did not comply with Rule 56. Under Rule 56(d) of the Federal Rules of Civil Procedure, after a party moves for summary judgment, the court may

defer considering the motion only "if the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Before the defendants filed their motion, the court told Washington to read the Rule, but he submitted no affidavit or declaration with his motion. That failure alone can justify the court's decision. *Kallal v. CIBA Vision Corp, Inc.*, 779 F.3d 443, 446 (7th Cir. 2015).

Second, Washington had ample time for discovery. During the seven months after the court set its scheduling order, Washington did not pursue *any* discovery on his claims, despite warnings to do so. He did not seek support for his allegations that the nurse's omissions from his medical chart harmed him or that the administrators barred brand-name therapeutic shoes from the prison. Nor did he seek information that might have added new parties, such as who in the health unit had mistakenly lost his insoles, or who sat on the committee that, he asserts, wrongly thought that the insoles would fit the state-issued medical shoes. A litigant who "forestalls prosecution of their own case is not entitled to seek additional discovery when the opposing side moves for summary judgment." *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1082 (7th Cir. 2016). We recognize that the schedule allowed for six more months of discovery after an opponent moved for summary judgment. But the district court reasonably warned Washington that this added time was available only for matters outside his control.

Washington responds that the theft of his legal documents was a matter out of his control. But the asserted theft happened three months before he sought more time, and Washington does not explain why he waited three months—a delay fully within his control—before he began to pursue discovery. In any event, the theft is irrelevant: Washington does not specify on appeal how these documents cured the evidentiary gaps in his claims, or that they would have allowed him to name new parties.

The third reason that the district court reasonably denied Washington's request for more time is that courts do not abuse their discretion in denying Rule 56(d) motions where "the request 'was based on nothing more than mere speculation.'" *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) (internal citation omitted). Washington describes needing "truth testing discovery" to uncover potential lies by the defendants. But he does not identify which statements in support of summary judgment are lies or how any belated discovery might disprove them. Because Washington did not give the district court reason to believe that extending the response deadline would bear fruit, the district court did not have to allow a "fishing expedition" that would delay summary judgment. *See id.*

On the merits, Washington challenges summary judgment for the nurse who initially omitted the podiatrist's recommendation. To get past summary judgment, Washington needed to supply evidence that the nurse deliberately disregarded a serious risk of severe harm by omitting from his medical chart the approval for insoles and brand-name shoes. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). But nothing suggests that the three-week lapse in recording the recommendation for insoles put Washington at serious risk of severe harm. *See Petties* 836 F.3d at 728. Likewise, the record contains no evidence that the omission of a brand name like Nike or New Balance, as opposed to "athletic-style shoes," which the nurse did record in his chart, harmed him. To the contrary, because he already owned two pairs of Nike shoes, the omission did not harm him. Finally, we recognize that the eight-month delay (caused by the misplaced insoles) may have harmed Washington. But no evidence connects the nurse to that misplacement.

Washington also contests the disposition of his case against the administrators. But as the district court observed, he did not furnish evidence that they maintained a policy prohibiting prisoners from buying brand-name therapeutics. Nor did he show that, given his ownership of athletic-style Nike shoes, any such policy harmed him. He responds that the court should nonetheless not have allowed the committee, which included non-medical personnel, to override his podiatrist's suggestion for brand-name shoes. But the members of the committee (or the authorities who created the committee) that made this decision are not defendants, and Washington never asked the court to add them. Finally, to the extent Washington thinks that the adverse ruling on summary judgment shows bias, he is mistaken. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

AFFIRMED